





U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

AUG 2 5 2017

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THOMAS E. PEREZ [now R. ALEXANDER
ACOSTA], Secretary of Labor,

        Plaintiff,

v.

ASSOCIATION OF PROFESSIONAL
FLIGHT ATTENDANTS,

        Defendant.

Civil Action No. 4:16-cv-1057-A

## BRIEF IN SUPPORT OF DEFENDANT
## APFA'S MOTION FOR SUMMARY JUDGMENT

ANDREW D. ROTH*
D.C. Bar No. 414038
ADAM BELLOTTI*
D.C. Bar No. 1020169
ROBERT ALEXANDER*
D.C. Bar No. 465673
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St. N.W., Tenth Floor
Washington, D.C. 20005
Tel: (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
Email: abellotti@bredhoff.com
Email: ralexander@bredhoff.com

*Admitted Pro Hac Vice

SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, TX 75214
Tel: (214) 637-0750
Fax: (214) 637-0730
Email: denison@baabdenison.com

Attorneys for Defendant Association
of Professional Flight Attendants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF THE CASE.............................................................................................1

    A.    The Secretary's Claims And Their Elements...........................................................1

    B.    The Basics Of The Internet-Based Electronic Voting System Used
        By APFA In The Challenged Election.....................................................................1

ARGUMENT .......................................................................................................................3

I.      THE APPLICABLE SUMMARY JUDGMENT STANDARD ....................................3

II.     APFA'S MOTION EASILY SATISFIES THIS APPLICABLE STANDARD ...........3

    A.    No Rational Trier Of Fact Could Find On This Record That The Alleged
        Violation Of § 401(a) "May Have Affected" The Election's Outcome ...................4

    B.    No Rational Trier Of Fact Could Find On This Record That § 401(c)
        Was Violated In The Manner Claimed In The Secretary's Complaint...................10

CONCLUSION..................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Bowser v. Merck & Co.*, 460 U.S. 824 (1983) ............................................................................ 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 3

*Chao v. Allied Pilots Association*, 2007 WL 518586 (N.D. Tex. Feb. 20, 2007) ........................... 5

*Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602 (1993) ........................... 17

*Donovan v. CSEA Local 1000, AFSCME*, 594 F. Supp. 188 (N.D.N.Y. 1984),
    *aff'd in part, rev'd in part on other grounds*, 761 F.2d 870 (2d Cir. 1985) .............................. 7

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp. 2d 648 (N.D. Tex. 2001) ......... 3

*Marshall v. Local 1010, United Steelworkers of Am.*, 664 F.2d 144 (7th Cir. 1981) .................... 6

*Marshall v. Local 468, Int'l Bhd. of Teamsters*, 643 F.2d 575 (9th Cir. 1980) .............................. 6

*Marshall v. Local Union 12447, United Steelworkers of Am.*, 591 F.2d 199 (3d Cir. 1978) ......... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................................... 3

*Miss. Prot. & Advocacy Sys. v. Cotten*, 929 F.2d 1054 (5th Cir. 1991) ........................................ 3

*Reich v. Dist. Lodge 720, Int'l Ass'n of Machinists*, 11 F.3d 1496 (9th Cir. 1993) ...................... 7

*Rose v. Lundy*, 455 U.S. 509 (1982) ............................................................................................ 17

*Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492 (1968) .................. 6, 9, 18

*Wirtz v. Local Union 410, IUOE*, 366 F.2d 438 (2d Cir. 1966) .................................................... 6

## STATUTES AND REGULATIONS

29 U.S.C. § 481(a) ............................................................................................................ 1, 4, 19

29 U.S.C. § 481(c) ........................................................................................................... 1, 10, 12

29 U.S.C. § 482 ..................................................................................................................... 1

29 U.S.C. § 482(c) .................................................................................................................. 1, 5

29 C.F.R. § 452.96 ................................................................................................................. 18

29 C.F.R. § 452.107(a) ............................................................................. 10, 11

29 C.F.R. § 452.107(c) ............................................................................. 15

29 C.F.R. § 452.110(a) ............................................................................. 10, 18

29 C.F.R. §§ 452.119 – 452.134 ............................................................... 19

29 C.F.R. § 452.120 ................................................................................. 20

29 C.F.R. § 452.124 ................................................................................. 20

Defendant Association of Professional Flight Attendants ("APFA"), a national labor union representing the flight attendants at American Airlines, submits this brief in support of its Rule 56 motion for summary judgment on the two-count Complaint filed against it by the Secretary of the United States Department of Labor ("DOL"), acting in his official capacity.

## STATEMENT OF THE CASE

A.   The Secretary's Claims And Their Elements

The Secretary filed this action against APFA under § 402 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 482, seeking a judgment declaring that the January 9, 2016 election of APFA's National President, National Vice President, National Secretary, and National Treasurer "is void," and directing APFA to conduct a new election (*i.e.,* a re-run election) for these four national offices "under Plaintiff's supervision." *See* Complaint ("Compl.") ¶ 1 (Dkt. No. 1).  The Secretary claims entitlement to this relief on the asserted grounds that APFA conducted the election in a manner that violated §§ 401(a) & (c) of the LMRDA, 29 U.S.C. §§ 481(a) & (c), respectively, *see* Compl. ¶¶ 25 & 26, and that both of these alleged statutory violations "may have affected" the election's outcome, *see id.* ¶ 27.  Only a statutory violation that "may have affected" the outcome of a union election is actionable under the LMRDA.  *See* 29 U.S.C. § 482(c); *infra* pp. 5-6.[1]

B.   The Basics Of The Internet-Based Electronic Voting System Used By APFA In The Challenged Election

The APFA engaged BallotPoint Election Services ("BallotPoint") to conduct the election at issue "using an internet-based electronic voting system in which voters cast their votes using the internet and telephone." *See* Compl. ¶ 20; Appendix of Evidentiary Materials in Support of

---

[1] APFA has filed a separate Appendix of relevant statutory and regulatory provisions in addition to the required Appendix of evidentiary materials.

APFA's Motion for Summary Judgment ("App.") at 163 (Horan Decl. ¶ 8). Specifically, APFA engaged BallotPoint to conduct the election using BallotPoint's "One-Vote, No-Void" internet-based electronic voting system. App. at 103 (Feldkamp Dep. at 92). For obvious reasons, an internet-based system that allows union members to vote over the internet or by telephone is ideal for a national union like APFA which has tens of thousands of members who live throughout the country and who constantly are on travel either domestically or internationally when performing their jobs as flight attendants. *See* App. at 161, 163 (Horan Decl. ¶¶ 2, 10).

In BallotPoint's One-Vote, No-Void system, a union uploads a voting roster to BallotPoint's Member Registration and Notification Server ("MRNS") before the start of the election. App. at 103, 124 (Feldkamp Dep. at 92 & Exh. 9, p.1). That roster is used to generate a series of random, 12-digit access codes, which are printed and mailed to each member. *Id.*

Voters can use their 12-digit access codes to vote either over the internet or by telephone. *Id.* Voters who choose to use the internet must navigate their web browsers to an APFA-specific website hosted by BallotPoint, and log in to the voting system using their 12-digit access codes. *Id.* At this point, internet voters are communicating with the MRNS server, which verifies that their access codes are valid, that they are eligible to vote, and that they have not yet voted. *Id.* If an internet voter passes all three checks, the system directs the user's web browser to a separate computer server, the Election Server ("ES"), which displays a ballot on the voter's computer screen which the voter can use to cast his/her vote. *Id.*; App. at 170 (Horan Dep. at 29).

Voters who choose to vote by telephone must call an APFA-specific telephone number included with the election materials. App. at 103, 124 (Feldkamp Dep. at 92 & Exh. 9, p.1). They are then directed to the MRNS, which they can log into using their 12-digit access codes. *Id.* If a telephone voter passes the same three checks applied by the MRNS to internet voters, the

MRNS directs the voter's telephone to the ES.  App. at 103, 124-125 (Feldkamp Dep. at 92 &

Exh. 9, pp.1-2).  The telephone voter then casts his/her vote by pressing the number associated

with his/her voting choice.  App. at 170 (Horan Dep. at 29).

The BallotPoint system doubly encrypts each vote cast in the election and stores that vote

on the ES; the system also stores a unique, indecipherable representation of the encrypted vote

on the MRNS.  App. at 103, 125 (Feldkamp Dep. at 92 & Exh. 9, p.2).  A unique confirmation

number is then displayed or dictated to the voter, confirming that the voting process was

successfully completed.  *Id.*  At the time of the final vote count or "tally," the ES counts each

stored vote electronically and produces a results sheet showing the total number of votes cast for

each candidate.  *Id.*; *see also* App. at 101-102, 116-123 (Feldkamp Dep. at 42-43 & Exh. 3).

## ARGUMENT

### I.     THE APPLICABLE SUMMARY JUDGMENT STANDARD

"The standard for granting a motion for summary judgment is the same as the standard

for a directed verdict. . . .  If the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no genuine issue for trial." *Lockheed Martin Corp. v.*

*Network Solutions, Inc.*, 141 F. Supp. 2d 648, 653 (N.D. Tex. 2001) (citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 597 (1986)).  *See also Miss. Prot. & Advocacy Sys. v. Cotten*, 929 F.2d 1054, 1058 (5th Cir.

1991) (same).

### II.    APFA'S MOTION EASILY SATISFIES THIS APPLICABLE STANDARD

On the record of this case taken as a whole, no rational trier of fact could find that the

DOL is entitled to the relief it seeks.  Accordingly, APFA's motion for summary judgment

should be granted.

- 3 -

A.   No Rational Trier Of Fact Could Find On This Record That The Alleged
Violation Of § 401(a) "May Have Affected" The Election's Outcome

Section 401(a) of the LMRDA provides, in pertinent part, that a national labor union like

APFA which elects its national officers via a direct membership vote shall conduct that election

"by secret ballot." *See* 29 U.S.C. § 481(a).

The DOL's claim that § 401(a)'s secret ballot requirement was violated in the election at

issue rests on the undisputed fact that the One-Vote, No-Void internet-based electronic voting

system that BallotPoint used to conduct the election, *see supra* pp. 1-3, "stores and maintains

member identifying information and voting records on two servers in a way that could allow

individuals with access to both of the servers" to "link[ ]" or connect voting members with their

voting choices and thereby "identify how a member voted," *see* Compl. ¶ 21.

The DOL acknowledges that its investigation into APFA's conduct of the election

uncovered no evidence that anyone at BallotPoint—including those individuals with access to

both of the BallotPoint system's servers—did in fact identify how APFA members voted using

data stored on those servers. *See* App. at 28-29 (Willertz Dep. at 86-87).[2] However, to establish

that the identification of how members voted would have been possible, the DOL investigators,

using the DOL's administrative subpoena power, forced BallotPoint to produce data from its two

servers from which the DOL itself "was able to match the names of [4,081] voters out of 9,335

---

[2] Mr. Stephen J. Willertz, a DOL supervisory employee, *see infra* p. 7, testified in his personal
capacity at his deposition to facts within his personal knowledge, including facts pertaining to
the DOL's investigation.  But the Secretary has stipulated that Mr. Willertz also was authorized
to testify, and did testify, in a representative capacity on the DOL's behalf with respect to DOL
policies and practices deemed relevant by APFA.  *See* App. at 72 (Stipulation).

votes cast to their choice of candidates." *See* Compl. ¶ 23; App. at 74-80 (Plaintiff's Interrogatory Responses at pp. 1-7); *id.* at 18-27, 32-33 (Willertz Dep. at 70-79, 119-20).[3]

Whether the use of an internet-based electronic voting system that stores data on two servers in a way that makes it possible for individuals with access to both servers to connect voting members with their voting choices violates § 401(a)'s secret ballot requirement is a complex issue of first impression.[4] However, in disposing of the instant summary judgment motion, it is unnecessary for the Court to consider and decide this issue. That is so because, on the summary judgment record, it is crystal clear and indisputable that the DOL is *not* entitled to the relief it seeks (the voiding of the APFA election and the conduct of a DOL-supervised re-run election) even if a § 401(a) violation could be found here.

Under § 402, a judicial finding of a § 401 violation in connection with the conduct of a union election is not sufficient standing alone to warrant voiding that election and ordering the union to conduct a DOL-supervised re-run election. Rather, under a § 402 proviso, such relief is warranted if, but only if, the presiding court also finds "upon a preponderance of the evidence" that the § 401 violation "may have affected the outcome of [the] election." 29 U.S.C. § 482(c).

---

[3] The Complaint contains a separate allegation (¶ 22) which, according to the DOL's prior briefing, can be taken as an allegation that the BallotPoint system "itself 'knows' that particular votes are attributable to particular voters." *See* Plaintiff's Response to Defendant's Motion to Dismiss at 15 (Dkt. No. 13). However, the record establishes that this allegation, so taken, is wholly unfounded. *See* App. at 99-100, 108-109 (Feldkamp Dep. at 17-18 & Exh.1, pp. 4-5); App. at 127-128, 143 (Stapleton Decl. ¶¶ 3-4 & Accompanying Expert Report at p. 15).

[4] Another Judge in this District dealt with a similar issue in *Chao v. Allied Pilots Association*, No. 05-338, 2007 WL 518586 (N.D. Tex. Feb. 20, 2007), but that decision was vacated in accord with a settlement agreement between the parties, *see* Dkt. No. 73 (June 13, 2007), and thus is of no precedential value. Moreover, that prior case involved an internet-based electronic voting system that differs substantially from the BallotPoint One-Vote, No-Void system at issue here.

As the Supreme Court has explained:

> "Th[is] proviso was intended to free unions from the disruptive effect
> of a voided election unless there is a meaningful relation between a
> violation of the Act and results of a particular election.  For example,
> if the Secretary's investigation revealed that 20 percent of the votes in
> an election had been tampered with, but that all officers had won by an
> 8-1 margin, the proviso should prevent upsetting the election. . . ."

*Wirtz v. Hotel, Motel & Club Employees Union, Local 6* ("*Wirtz v. Hotel Employees*"), 391 U.S.

492, 507 (1968) (quoting *Wirtz v. Local Union 410, IUOE*, 366 F.2d 438, 444 (2d Cir. 1966)).

Under the analytical framework established by the Supreme Court in *Wirtz v. Hotel*

*Employees*, "a proved violation of § 401 [has] the effect of establishing a prima facie case that

the violation 'may have affected' the outcome." 391 U.S. at 506-07.  But "[t]his effect may of

course be met by evidence which supports a finding that the violation did not affect the result."

*Id.* at 507.  In other words, a proved violation of § 401 creates a presumption that the election's

outcome has been affected, but the defendant union can rebut that presumption by pointing to

"tangible evidence against the reasonable possibility that the [violation] did affect the outcome."

*Id.* at 508; *accord e.g. Marshall v. Local 1010, United Steelworkers of Am.*, 664 F.2d 144, 148

(7th Cir. 1981); *Marshall v. Local 468, Int'l Bhd. of Teamsters*, 643 F.2d 575, 577-78 (9th Cir.

1980).  As shown below, the "tangible evidence" of record "against the reasonable possibility"

that the alleged violation of § 401(a)'s secret ballot requirement "did affect the outcome" of

APFA's election is overwhelming and more than sufficient to carry the day for APFA.

A violation of § 401(a)'s secret ballot requirement can potentially affect the voting

behavior of union members, and thus potentially affect the outcome of a union election, by

causing the members to alter their votes, or to not vote at all, out of a fear that their voting

choices will be revealed to persons in a position to retaliate against them based on those choices.

*See Marshall v. Local Union 12447, United Steelworkers of Am.*, 591 F.2d 199, 205 (3d Cir.

- 6 -

1978) (noting the potential for such a result in the event of a secret ballot violation); *Donovan v. CSEA Local 1000, AFSCME*, 594 F. Supp. 188, 196 (N.D.N.Y. 1984), *aff'd in part, rev'd in part on other grounds*, 761 F.2d 870 (2d Cir. 1985) (same); *see also generally Reich v. Dist. Lodge 720, Int'l Ass'n of Machinists*, 11 F.3d 1496, 1500 (9th Cir. 1993) ("one of the primary purposes of the secret ballot is to prevent recrimination against persons who vote for losing candidates"). But such a potential obviously does not exist when union members have no knowledge or awareness of the facts surrounding the alleged secret ballot violation, and thus no basis for fearing that their voting choices will be revealed because of that violation.

To put this point in concrete terms bearing directly on this case, according to the DOL, the flaw in the BallotPoint system, from the standpoint of ensuring ballot secrecy, is that it allows persons with access to both of the system's servers to use data stored on those servers to connect voting members with their voting choices. *See* Compl. ¶ 21; App. at 30-34 (Willertz Dep. at 117-20, 143). But if voting members in a BallotPoint election have no knowledge or awareness of the asserted flaw in the BallotPoint system allowing for such a connection to be made, there is no risk that the members' voting behavior will be impacted by the asserted flaw, and thus no "reasonable possibility" that the asserted flaw will affect the election's outcome.

The key factual issue here, then, is whether APFA members eligible to vote in the APFA election were aware of the alleged BallotPoint system flaw that forms the basis of the DOL's secret ballot violation claim in this case. And, the dispositive record evidence bearing on that key factual issue is the deposition testimony of Stephen J. Willertz, the head of the DOL office that investigated the APFA election and an active participant in the investigation. *See* App. at 6-11 (Willertz Dep. at 13-18).

In his deposition testimony, Mr. Willertz conceded that the DOL's investigation into the APFA election produced "no evidence" that "any" APFA member was aware of the fact that, to quote ¶ 21 of the Complaint, "[t]he BallotPoint system stores and maintains member identifying information and voting records on two servers in a way that could allow individuals with access to both of the servers" to "link[ ]" or connect voting members with their voting choices and thereby "identify how a member voted." *See* App. at 15-17, 63 (Willertz Dep. at 45-47, 228).

Of greater significance, Mr. Willertz also conceded that based on the evidence noted in the DOL's investigation, there is "just no way" that APFA members could have made "any sort of assessment as to whether or not votes and voters could be connected" using data stored in the BallotPoint system. *See* App. at 12-14 (Willertz Dep. at 40-42); *see also id.* at 59-60 (Willertz Dep. at 224-25) (under the BallotPoint system, "[t]here is no way for [voters] to know exactly what was behind the scenes or in the black box"). As Mr. Willertz elaborated, the evidence noted in the DOL's investigation consisted of evidence that: (i) the BallotPoint system was not accessible for observation or inspection by APFA members or their agents; and (ii) the system was "complicated" and "highly technical" in its design. *See id.* at 12-14, 61-62 (Willertz Dep. at 40-42, 226-27).[5]

Given Mr. Willertz's concession that based on the evidence noted in the DOL's investigation there is "just no way" that APFA members could have made "any sort of assessment as to whether or not votes and voters could be connected" using data stored in the BallotPoint system, it follows that there is "just no way" that the asserted BallotPoint system flaw allowing for such a connection to be made could have impacted the members' voting

---

[5] *See also* App. at 74-80 (Plaintiff's Interrogatory Responses at pp. 1-7) (describing the elaborate methodology used by the DOL in matching some voters with their votes using data stored in the BallotPoint system).

behavior and thereby affected the outcome of the APFA election. Simply put, under the Supreme Court's decision in *Wirtz v. Hotel Employees*, Mr. Willertz's concession on this point is fatal to the DOL's claimed entitlement to the relief it seeks based on the secret ballot violation alleged in the Complaint.

According to the DOL, the foregoing analysis is faulty because, given the impossibility of getting "inside of the heads" of individual APFA members whose voting choices were identifiable under the BallotPoint system, it is impossible to "know" with certainty that the alleged BallotPoint system flaw allowing for such voting choice identification did not affect the voting behavior of those members and thus did not affect the election's outcome. *See* App. at 52-63 (Willertz Dep. at 217-228). But in truth, it is the DOL's analysis that is faulty. Under the Supreme Court's decision in *Wirtz v. Hotel Employees*, the defendant union does not bear the burden of proving with certainty that a secret ballot violation did not affect the election's outcome—a truly impossible task in its own right. Rather, the union's burden is to negate "the reasonable possibility" that the violation did affect the election's outcome. 391 U.S. at 508. Mr. Willertz's deposition testimony unquestionably negates any such reasonable possibility. As he conceded, APFA members had "just no way" of knowing about the alleged BallotPoint system flaw allowing for voting choice identification. This lack of potential knowledge, by definition, rules out the reasonable possibility that the members' voting behavior was affected by the alleged system flaw. And, the impossibility of getting "inside of the heads" of individual APFA members whose voting choices were identifiable under the BallotPoint system is certainly no barrier to recognition of this simple reality.

In sum, for the foregoing reasons, the DOL plainly is *not* entitled to the relief it seeks (the voiding of the APFA election and the conduct of a DOL-supervised re-run election) based on the § 401(a) violation alleged in the Complaint, even if such a violation could be found here.

B.      No Rational Trier Of Fact Could Find On This Record That § 401(c)
        Was Violated In The Manner Claimed In The Secretary's Complaint

The DOL also seeks to void the APFA election and force a re-run election based on an alleged violation of § 401(c), but that effort fares no better. The reason, as shown below, is that the DOL's claim of a § 401(c) violation fails as a matter of law on the undisputed facts of record.

Section 401(c) provides, in pertinent part, that in all union officer elections, "[a]dequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots." *See* 29 U.S.C. § 481(c).

DOL regulations interpreting the LMRDA recognize that this statutory language imposes two separate and distinct mandates on covered unions. The first is "a general mandate" that in conducting their officer elections, the unions shall provide "adequate safeguards to insure a fair election." *See* 29 C.F.R. § 452.110(a). The second is a specific mandate that these safeguards shall include the right of each candidate "to have an observer (1) at the polls and (2) at the counting of the ballots." *See id.* § 452.107(a). Although this likely goes without saying, "an observer" for these statutory purposes is "a human being with eyes" who is capable of personally viewing first-hand any conduct occurring at the polls or at the counting of the ballots that might compromise the fairness of the election. *See* App. at 35-36 (Willertz Dep. at 160-61).

The DOL's § 401(c) claim in this case is framed by the following undisputed facts of record:

- For the largely self-evident reasons spelled out in the accompanying footnote, in a union election conducted, as here, "using an internet-based electronic voting system," Compl.

- 10 -

¶ 20, it is literally impossible for a union to comply with § 401(c)'s specific mandate that the union afford each candidate the right "to have an observer (1) at the polls and (2) at the counting of the ballots," 29 C.F.R. § 452.107(a).[6]

- Given the impossibility of implementing the specific observer safeguards mandated by § 401(c), APFA and BallotPoint adopted and implemented a wide range of *alternative* safeguards in connection with the conduct of the challenged APFA election. These alternative safeguards included both a set of alternative observer safeguards such as the right of candidates to have an observer present at the preparation and mailing of the codes required by APFA members to access the BallotPoint system via the internet or telephone, *see* App. at 91-92 (APFA Interrogatory Answers at pp. 5-6), and a set of alternative technology-based safeguards such as the encryption of cast votes and a "vote digest" system for determining whether any of the cast votes had been tampered with, *see* App. at 99-100, 111-114 (Feldkamp Dep. at 17-18 & Exh. 1, pp. 7-10).

- As the DOL itself concedes, App. at 51 (Willertz Dep. at 200), the Complaint in this case does *not* allege a violation by APFA of § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided. Nor did the DOL make a finding of

---

[6] Where, as here, an internet-based electronic voting system is used, individual voters cast their ballots remotely over the internet or by telephone from a location of their own choosing, rather than in-person at a central polling site or at multiple polling sites. *See supra* pp. 1-3. Accordingly, there are no "polls" in such a union election, making it impossible for unions to afford candidates the right to have an observer "at" those non-existent "polls." *See* App. at 37-39, 48-49 (Willertz Dep. at 166-68, 195-96) (DOL concession on this point). And, because the cast ballots are counted electronically by a computer in a manner that cannot be seen by the human eye, it also is impossible for unions to afford candidates the right to have an observer "at the counting of the ballots." *See* App. at 40-41 (Willertz Dep. at 171-72) (DOL concession on this point); *see also supra* p. 3 (describing the BallotPoint vote-tallying process); App. at 99-100, 108-109 (Feldkamp Dep. at 17-18 & Exh. 1, pp. 4-5) (same). As the DOL itself neatly summed up the point in a recently-issued publication discussed more fully *infra* pp. 15-16, neither "the 'polls'" nor "[the] 'tally'" are "visible" to the human eye when an internet-based electronic voting system is used. *See* App. at 41, 69 (Willertz Dep. at 172 & Exh. 13, p.3).

such a § 401(c) violation based on its investigation into the APFA election. App. at 50-
51 (Willertz Dep. at 199-200). Thus, for present purposes, it must be taken as undisputed
that the alternative safeguards implemented by APFA in the challenged election were
sufficient to satisfy § 401(c)'s general mandate that "[a]dequate safeguards to insure a
fair election" be provided.

- Rather, the DOL's second claim in this case, stated in real-world terms fully justified by
the summary judgment record, is that APFA violated § 401(c) by failing to engage in the
impossible task of affording candidates the specific observer right provided for in
§ 401(c)—*i.e.*, "the right . . . to have an observer at the polls and at the counting of the
ballots." *See* Compl. ¶ 26 ("The APFA violated section 401(c) of the [LMRDA], 29
U.S.C. § 481(c), *by denying a candidate's right to have an observer in the January 9,
2016 election*, because the electronic voting system did not permit an observer to verify
that a vote was recorded and tallied correctly.") (emphasis added).

All this being so, the question squarely presented here is whether a union that conducts an
election using an internet-based electronic voting system violates § 401(c) by not engaging in the
literally impossible task of affording candidates the specific observer right provided for in
§ 401(c), even though it is undisputed that the union, in conducting the election, implemented
alternative safeguards that satisfied § 401(c)'s general mandate that "[a]dequate safeguards to
insure a fair election" be provided.

In prior briefing, the DOL took the position, in an *arguendo* context preceding the
development of the summary judgment record now before this Court, that the answer to this
question is "yes." Specifically, in its brief opposing APFA's motion to dismiss, the DOL took
the position that "even assuming the APFA were correct that there is no possible way to allow

- 12 -

observers to verify the counting of votes in the specific voting system the APFA has opted to use"—a fact that now is firmly established by the summary judgment record, *see supra* pp. 10-11 & n.6—"it would not follow that the LMRDA's observer requirement is thereby simply rendered inapplicable to the APFA's election. Instead, since the LMRDA expressly requires that observers be permitted, the logical consequence of the APFA's argument would be that the APFA has failed to conduct an LMRDA-compliant election . . . ." *See* Plaintiff's Response to Defendant's Motion to Dismiss ("DOL MTD Resp. Br.") at 22 (Dkt. No. 13).

In actuality, however, the correct answer to the question presented here is "no." That is so because, as shown below, § 401(c) properly is interpreted as follows: A union does *not* violate § 401(c) if it chooses to use an election procedure in which it is literally impossible to comply with § 401(c)'s specific observer requirement, so long as the union implements alternative safeguards that satisfy § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided.

1.    As a threshold matter, it is highly significant that the DOL's stated, in-court position on the question presented here is squarely at odds with the position that the DOL consistently has taken in its out-of-court pronouncements regarding the proper interpretation of § 401(c)—including, most notably, a very recent one regarding the proper interpretation of § 401(c) in the specific context of internet-based voting.

Before turning to this very recent out-of-court pronouncement dealing specifically with internet-based voting, some historical perspective is in order. Historically, national unions like APFA with tens of thousands of members spread out across the country commonly have used a mail ballot voting system to conduct their national officer elections. *See* App. at 163 (Horan Decl. ¶¶ 8-9). A mail ballot voting system is *identical* to an internet-based electronic voting

system in one important respect of direct relevance here: in a mail ballot election, voting takes place remotely from a location of the individual voter's own choosing, rather than in-person at a central polling site or at multiple polling sites. Accordingly, as in an internet-based electronic voting system election, there are no "polls" in a mail ballot election, making it impossible for a union conducting the election to afford candidates their § 401(c) right to have an observer "at" those non-existent "polls." *See* App. at 38 (Willertz Dep. at 167) (conceding that "[t]here is no way that an observer could observe somebody filling out their ballot in their living room in a mail ballot election").

However, notwithstanding the impossibility of compliance with § 401(c)'s specific observer requirement in the context of a mail ballot election, the DOL never has taken the position in any of its public pronouncements that a union which chooses to conduct an election by mail balloting has thereby "failed to conduct an LMRDA-compliant election." DOL MTD Resp. Br. at 22. Quite to the contrary, the DOL's stated out-of-court position on this issue is as follows: A mail ballot election will be found LMRDA-complaint if, as a substitute for the impossible-to-comply-with statutory requirement that candidates be afforded the right to have an observer "at the polls," the union implements two alternative safeguards that—coupled with the statutory observer requirement that it *is* possible for a union to comply with in a mail ballot election (*viz.*, the requirement of allowing an observer "at the counting of the ballots")—satisfy § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election be provided."

*See* 29 C.F.R. § 452.107(c); *see also* App. at 42-45 (Willertz Dep. at 173-76) (conceding that this is the DOL's out-of-court position with respect to mail ballot elections).[7]

After this lawsuit was filed, the DOL issued a publication titled "OLMS Compliance Tip: Electing Union Officers Using Remote Voting Systems." *See* App. at 41, 67-71 (Willertz Dep. at 172 & Exh. 13).[8] In that Compliance Tip, the DOL has taken an out-of-court position with respect to internet-based electronic voting system elections that mirrors its longstanding position with respect to mail ballot elections. Specifically, in that Compliance Tip, the DOL tacitly acknowledges (as it must) the impossibility of compliance with § 401(c)'s specific observer requirement in the context of internet-based electronic voting system elections. *See supra* p. 11 n.6. But in that Compliance Tip, the DOL does *not* take the position, as it does here, that this impossibility of compliance means that a union which chooses to conduct an election using an internet-based electronic voting system has thereby "failed to conduct an LMRDA-compliant election." DOL MTD Resp. Br. at 22. Quite to the contrary, the Compliance Tip makes clear that an internet-based electronic voting system election will be found LMRDA-compliant if, as a substitute for the impossible-to-comply-with statutory requirement that candidates be afforded the right to have an observer "at the polls and at the counting of the ballots," the union implements various other alternative safeguards that satisfy § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided. *See* App. at 69-70 (Compliance

---

[7] The two alternative safeguards that the DOL requires as a substitute in a mail ballot election are: (i) allowing observers to be present "at the preparation and mailing of the ballots"; and (ii) allowing observers to be present at the "receipt [of the ballots] by the counting agency." *See* 29 C.F.R. § 452.107(c); *see also* App. at 43 (Willertz Dep. at 174).

[8] The acronym "OLMS" stands for The Office of Labor-Management Standards, and as the Compliance Tip recites, OLMS is the agency within the DOL that is responsible for enforcing the LMRDA. *See* App. at 67 (Compliance Tip, p.1).

Tip, pp. 3-4); *see also* App. at 46-47 (Willertz Dep. at 192-93) (conceding that this is the DOL's out-of-court position with respect to internet-based electronic voting system elections).[9]

In short, in its out-of-court pronouncements regarding the proper interpretation of § 401(c), the DOL itself has interpreted § 401(c) in precisely the manner that APFA contends it should be interpreted: A union does *not* violate § 401(c) if it chooses to use an election procedure in which it is literally impossible to comply with § 401(c)'s specific observer requirement, so long as the union implements alternative safeguards that satisfy § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided.

2.    In arguing in favor of a different interpretation of § 401(c) in its prior briefing, the DOL has taken a very simplistic approach: Because § 401(c) "expressly requires that observers be permitted" at the polls and at the counting of the ballots, any election procedure adopted by a union in which compliance with this express statutory requirement is impossible is an invalid (*i.e.*, non- "LMRDA-compliant") election procedure. *Supra* pp. 12-13 (quoting DOL MTD Resp. Br. at 22).[10] But as the DOL's own out-of-court pronouncements in this area implicitly recognize, this approach is misguided and insupportable.

To reiterate, the § 401(c) language at issue here states, in full: "Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer

---

[9] The various other alternative safeguards that the DOL requires as a substitute in an internet-based electronic voting system election are: (i) several alternative observer safeguards including "[t]he opportunity to observe the preparation and distribution of voting credentials to be used by members"; and (ii) several alternative technology-based safeguards including "technology that protects the integrity of the vote from the point when it is cast by the voter through the voting process, such as client-side encryption technology," and "technology that provides a secure method of independent vote verification . . . ." *See* App. at 69-70 (Compliance Tip, at pp. 3-4).

[10] To be sure, the DOL has advanced this simplistic interpretation of § 401(c) in this case only with specific reference to internet-based electronic voting system elections. But for the reasons set out above, that interpretation of § 401(c), if accepted, would of logical necessity invalidate mail ballot elections as well.

at the polls and at the counting of the ballots." This § 401(c) language is facially ambiguous on the question of whether the LMRDA allows unions to use election procedures such as mail balloting and internet-based voting in which there are no "polls" that an observer possibly could be given access to, but in which the union is capable of implementing alternative safeguards "[a]dequate . . . to insure a fair election." Indeed, in drafting this § 401(c) language, Congress obviously was focused on traditional union election procedures in which voting takes place in-person "at the polls," belying any suggestion that this language unambiguously defines a union's rights and obligations vis-a-vis union election procedures in which voting takes place by mail or over the internet rather than "at the polls."

Given that § 401(c)'s language does not unambiguously resolve the question presented here, this Court's interpretation of § 401(c) must be guided by an analysis of the LMRDA's underlying policies and purposes. *See Bowser v. Merck & Co.*, 460 U.S. 824, 831 n.7 (1983) ("It is a well-settled canon of statutory construction that, where the language does not dictate an answer to the problem before the Court, 'we must analyze the policies underlying the statutory provision to determine its proper scope.'") (quoting *Rose v. Lundy*, 455 U.S. 509, 517 (1982)); *Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 627 (1993) ("[W]e turn, as we would in the usual case of textual ambiguity, to the legislative purpose . . . ."). And, such an analysis of the LMRDA's policies and purposes yields the clear-cut conclusion that APFA's (and the DOL's out-of-court) interpretation of § 401(c) is the proper one.

The purpose of the § 401(c) language at issue is manifest on its face: "to insure" that all LMRDA-covered union elections are "fair." Section 401(c), as written, embodies Congress' judgment that when unions conduct traditional, in-person elections at a central polling site or at multiple polling sites, the election's fairness can be insured only if candidates are afforded the

- 17 -

right to have observers present "at the polls and at the counting of the ballots." But if unions that conduct their elections using mail balloting or internet-based voting procedures—where it is literally impossible to meet § 401(c)'s specific observer requirement as written—are capable of implementing alternative safeguards adequate to insure the election's fairness, then § 401(c)'s purpose is fully achieved by allowing unions to use those mail balloting and internet-based voting procedures, subject to the requirement that the unions make proper use of the alternative safeguards available to them. Conversely, where such alternative safeguards are available and properly utilized, no conceivable statutory purpose would be served by prohibiting unions from using mail balloting and internet-based voting procedures, as would be the case under the simplistic interpretation of § 401(c) advanced by the DOL here.

Just as significantly, that simplistic interpretation of § 401(c), if accepted, would thwart other important LMRDA policies and create a wholly untenable situation for a national union like APFA which has tens of thousands of members who live throughout the country and who constantly are on travel either domestically or internationally when performing their jobs as flight attendants.[11]

In keeping with the LMRDA's policy "against unnecessary governmental intrusion into internal union affairs," *Wirtz v. Hotel Employees*, *supra*, 391 U.S. at 496 (internal quotation marks omitted), the DOL itself has interpreted § 401 as affording unions a "wide range of discretion" regarding the conduct of their elections, *see* 29 C.F.R. § 452.110(a). *See also id.* § 452.96 (explaining that the LMRDA "does not . . . prescribe in detail election procedures which must be followed"). The simplistic interpretation of § 401(c) advanced by the DOL here,

---

[11] We use APFA as an example in this brief for obvious reasons, but note that there are many national unions similarly situated to APFA that would also be adversely impacted by such an interpretation of § 401(c), including national unions representing other flight attendants, airline pilots, maritime workers, railroad workers, and truckers.

by prohibiting unions from using mail balloting and internet-based voting procedures to conduct their elections, would impinge deeply on this "wide range of discretion" afforded unions in the conduct of their elections. At the same time, given the DOL's recognition that the fairness of mail ballot and internet-based voting system elections can be insured through a union's implementation of appropriate alternative safeguards, *see supra* pp. 13-16, reading such a prohibition into § 401(c) would strike at the heart of the LMRDA's policy "against unnecessary governmental intrusion into internal union affairs."

Furthermore, reading such a prohibition into § 401(c) would pose unique difficulties for national unions that Congress could not possibly have intended, including in particular national unions like APFA whose members' jobs involve constant travel both domestically and internationally. Simply put, such a prohibition would leave APFA (and likely other similarly-situated national unions representing transportation workers) with no tenable option for conducting their national officer elections.

If both mail balloting and internet-based voting procedures were off the table, those national unions would, on paper at least, have two options for conducting their officer elections. First, they would have the option of conducting their elections in-person at multiple polling sites around the country. Second, the LMRDA also gives national unions the option of conducting their elections "at a convention of delegates" chosen in a series of separate, LMRDA-covered elections conducted by the local unions or other local units comprising the national union. *See* 29 U.S.C. § 481(a); 29 C.F.R. §§ 452.119 – 452.134 (the DOL interpretative regulations covering such national union conventions and associated local delegate elections).

The first theoretical option would almost surely be impractical for any national union with thousands of members who live throughout the country, given the obvious costs and

- 19 -

burdens that would be imposed on the national union in administering in-person elections at multiple polling sites across the country and on the members in travelling to a convenient polling site. But in APFA's case, this theoretical option would be untenable. As an initial matter, APFA members throughout the country live in relative geographic proximity to one of 16 separate "bases" or "satellite bases" (most but not all of which correspond to airports that serve as American Airlines hubs), meaning that to conduct an in-person election among the entire APFA membership, APFA would have to set up and staff at least 16 separate in-person polling sites. *See* App. at 161-163 (Horan Decl. ¶¶ 3, 10).[12] More importantly, on any given day in which such an in-person election would be held, approximately 40% of APFA's members would be on an assigned airline trip either domestically or internationally that would make it difficult or impossible for them to show up in person to vote. *See id.* at 163-164 (Horan Decl. ¶¶ 10-11). Thus, even if APFA could overcome the other practical impediments to an in-person election noted above, such an in-person election would have the unacceptable consequence of immediately disenfranchising a substantial percentage of APFA members.

The second theoretical option of "a convention of delegates"—which Congress obviously extended to national unions in recognition of the practical impediments to their conduct of in-person, direct membership elections—would not be a tenable option for APFA either. That is so because under the DOL's interpretative regulations, the delegates to the APFA convention would have to be chosen at the local unit "base" level in a series of separate delegate elections conforming to all of the LMRDA's requirements. *See* 29 C.F.R. §§ 452.120, 452.124. And, under the interpretation of § 401(c) advanced by the DOL here, each of those separate delegate elections at the local unit "base" level would have to be conducted *in-person*. Conducting a

---

[12] The burden on the candidates for national office would be substantial as well, as they would have to arrange, if possible, for observers to be present at all 16 or more polling sites.

multiplicity of separate in-person delegate elections at the local unit "base" level would be every bit as costly and burdensome for APFA and its members as conducting a single, in-person, direct membership election. More importantly, proceeding in this fashion would also have the unacceptable consequence of immediately disenfranchising the substantial percentage of APFA members who would be unable to show up in person to vote on any given day set for a delegate election at the local unit "base" level because of their flight attendant responsibilities.[13]

There is no need to belabor the matter. From every relevant vantage point, the DOL's out-of-court interpretation of § 401(c), which APFA shares, is eminently proper and sound, whereas the DOL's in-court interpretation is patently improper and unsound.

      *            *            *            *

In sum, the DOL does not (and cannot) dispute that it was literally impossible for APFA to conduct the internet-based electronic voting system election at issue in compliance with § 401(c)'s specific observer requirement. And, given the manner in which the Secretary's Complaint is framed, the DOL does not (and cannot) dispute that APFA was able to implement *alternative* safeguards that satisfied § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided. Thus, on a proper interpretation of § 401(c), the DOL's § 401(c) claim in this case fails as a matter of law, and the DOL is not entitled to the relief it seeks on that claim.

---

[13] This untenable situation would be complicated even further by the fact that many APFA members are "commuters" who do not live near their assigned local base. *See* App. at 161-162 (Horan Decl. ¶ 3). Depending on just how far such "commuters" live from their assigned local base, it would be difficult if not impossible for them to show up in person to vote in that local base's delegate election even if they were not on work travel on the day of the election.

## CONCLUSION

For the foregoing reasons, APFA's motion for summary judgment should be granted.

Respectfully submitted,

ANDREW D. ROTH*
D.C. Bar No. 414038
ROBERT ALEXANDER*
D.C. BAR No. 465673
ADAM BELLOTTI*
D.C. Bar No. 1020169
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St. N.W., Tenth Floor
Washington, D.C.  20005
Tel:  (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
Email: ralexander@bredhoff.com
Email: abellotti@bredhoff.com

SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, TX 75214
Tel: (214) 637-0750
Fax: (214) 637-0730
Email: denison@baabdenison.com

Attorneys for Defendant Association
of Professional Flight Attendants

* Admitted Pro Hac Vice

DATED:  August 25, 2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 25th day of August, 2017, the above and foregoing Brief in Support of Motion for Summary Judgment was served on the following Plaintiff's counsel of record electronically by email transmission and by overnight mail, as authorized by Federal Rule of Civil Procedure 5(b):

Brian W. Stoltz
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8626
Facsimile: 214-659-8807
brian.stoltz@usdoj.gov

SANFORD R. DENISON

- 23 -