# ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG 2 5 2017

CLERK, U.S. DISTRICT COURT
By _____
Deputy

|  |  |
|---|---|
| THOMAS E. PEREZ [now R. ALEXANDER ACOSTA], Secretary of Labor, | |
| Plaintiff, | Civil Action No. 4:16-CV-1057-A |
| v. | |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, | |
| Defendant. | |

## APPENDIX TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JOHN R. PARKER
United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Plaintiff,
the Secretary of Labor

# Table of Contents

| Tab | | Page |
|---|---|---|
| A. | Election Notice | App. 001 |
| B. | Voting Notice and Instructions | App. 002 |
| C. | APFA Constitution (excerpts) | App. 004 |
| D. | Deposition Testimony of Cindy Horan (excerpts) | App. 008 |
| | Horan Ex. 1: Defendant APFA's Answers to Plaintiff DOL's First Set of Interrogatories | App. 035 |
| | Horan Ex. 4: Election Results Sheet | App. 044 |
| | Horan Ex. 5: Internal Election Protest | App. 046 |
| | Horan Ex. 6: Letter Denying Election Protest | App. 049 |
| E. | Internal Appeal of Denial of Election Protest | App. 062 |
| F. | Letter Denying Appeal | App. 064 |
| G. | Deposition Testimony of Gerry Feldkamp (excerpts) | App. 065 |
| | Feldkamp Ex. 2: Data from "Votes Table" (excerpts) | App. 128 |
| | Feldkamp Ex. 4: Structure of Data from "OEM Table" | App. 129 |
| | Feldkamp Ex. 5: Written Communication re: "OEM Table" | App. 130 |
| H. | Deposition Testimony of Charles (Curt) Stapleton (excerpts) | App. 131 |
| | Stapleton Ex. 2: Expert Report (excerpts) | App. 171 |
| I. | Stipulation Regarding Authenticity of Documents | App. 184 |
| J. | Declaration of Stephen J. Willertz | App. 186 |
| | Willertz Ex. 1: Complaint filed with Deparament of Labor | App. 193 |

Respectfully submitted,

JOHN R. PARKER
United States Attorney

*Brian W. Stoltz*

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:  214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Plaintiff,
the Secretary of Labor

## Certificate of Service

On August 25, 2017, I served the foregoing document on defendant, the

Association of Professional Flight Attendants, by mailing it by prepaid first-class mail to

defendant's counsel of record, addressed as follows:

Andrew D. Roth
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., N.W., Tenth Floor
Washington, D.C. 20005

*Brian W. Stoltz*

Brian W. Stoltz
Assistant United States Attorney

## ELECTION NOTICE

Pursuant to Article VI, Section 2 of the APFA Constitution, Notifications of WILLINGNESS-TO-SERVE are now being accepted for the <u>NATIONAL OFFICER</u> positions of **NATIONAL PRESIDENT, NATIONAL VICE PRESIDENT, NATIONAL SECRETARY** and **NATIONAL TREASURER.**

## CANDIDATE INFORMATION

This election is open to <u>all</u> members in good standing. Each candidate must be a member in good standing by **0900 CT, November 20, 2015.** Any member in good standing may self-nominate her/himself or may nominate another member. Candidates **not** self-nominated will be contacted by the National Ballot Committee to confirm their Willingness-to-Serve. Withdrawals must be made within three (3) days after the Willingness-to-Serve due date.

## VOTER INFORMATION

In order to be able to vote, each APFA member must be a member in good standing (no more than sixty (60) days in dues arrears) no later than five (5) days prior to the date the votes are counted ("balloting date") by **January 4, 2016,** for the primary election and by **February 16, 2016,** for any run-off election. A member will also be eligible to vote if he or she is on an official APFA payment plan that was executed at least thirty (30) days prior to the balloting date by **December 10, 2015,** for the primary election and by **January 19, 2016,** for any run-off election.

## ELECTION TIMETABLE

Willingness-to-Serve Notifications must be received in the designated P.O. Box by **1000 CT, November 20, 2015.** The National Ballot Committee accepts no responsibility for the failure of the U.S. Postal Service to deliver Express Mail, Certified Mail, or proper notification thereof, to the P.O. Box. **Regular mail, posted in a timely fashion, is recommended.**

Ballots will be mailed **December 10, 2015.** Ballots must be cast by **1000 CT, January 9, 2016.** If no candidate receives a majority (50% plus one) of the valid votes cast for a national office, the National Ballot Committee will mail a run-off ballot to all members no later than **January 19, 2016.** Ballots for the run-off election must be cast by **1000 CT, February 18, 2016.**

The newly elected National Officers will assume office on April 1, 2016 for a four-year term of office ending on March 31, 2020.

## INSTRUCTIONS FOR WILLINGNESS-TO-SERVE

Only this form or a photocopy will be accepted. All information should be **typed** or **printed.** Each candidate's information will be reprinted with a consistent format, and **no** graphics will be included.

All candidate information is optional, including personal statements and references. **There will be no corrections made to spelling, punctuation, grammar, capitalization, intent or content.** If limitations are exceeded, personal statements will be cut off at the limit and biographical information will be brought into compliance by deleting the oldest items. **It is the responsibility of the candidate to inform references that their names will be printed in the ballot packet.** As a reminder to all prospective candidates, the use of the APFA or the American Airlines logo, symbol or insignia on campaign material is prohibited.

All Willingness-to-Serve Notifications must be received in the following P.O. Box by **1000 CT, November 20, 2015:**
**APFA National Ballot Committee, P.O. Box 907, Euless, Texas 76039-0907**

### TO DOWNLOAD A WILLINGNESS-TO-SERVE GO TO: WWW.APFA.ORG

**Association of Professional Flight Attendants**

NATIONAL OFFICER ELECTION

# VOTING NOTICE & INSTRUCTIONS

ıılllıılllııllıulılllıl|ılıulıılllı|ı|ı|ı|ılll|ı
10 10 1 ********************MIXED AADC 480



## NATIONAL OFFICER ELECTION

**December 10, 2015**

*Dear APFA Member,*

### ***** ATTENTION: MAJOR CHANGE *****
### YOU WILL NOT BE ABLE TO CHANGE YOUR VOTE



The National Officer Election is being conducted by secret ballot using the telephone and Internet, through the BallotPoint Election Services voting system. To vote, follow the instructions shown below. *You may vote only once.* If you have any questions, please contact National Ballot Committee by phone at 817.540.0108 ext. 8311.

**Voting opens: 10:00 AM CT on Thursday, December 10, 2015**
**Voting closes: 10:00 AM CT on Saturday, January 9, 2016**

**Access Code: 4860 7508 5447**

# LOGIN and VOTING INSTRUCTIONS

**You will have about 15 minutes to cast your vote** once you have logged in to the BallotPoint system. To help you cast your vote successfully, you can prepare your selections before logging in by reviewing the Voting Guide.

1.   **To vote by phone:** Call **1.800.698.3789** toll-free within the US, Canada, and Puerto Rico. Outside these toll-free areas call **1.503.419.1145**. Enter the Access Code shown above when prompted.

  **To vote by Internet:** Go to: **https://BallotPoint.com/APFA** – be sure to type the **s** in https. Click the *CLICK TO LOG IN* button, which takes you to the BallotPoint MRNS (Member Registration and Notification Server). Enter the Access Code shown above and click *Log In.*

2.   Follow the directions to cast your vote. Done!



*Questions? Please contact National Ballot Committee.*
*817.540.0108 ext. 8311*

**Association of Professional Flight Attendants**

NATIONAL OFFICER ELECTION
# VOTING GUIDE

### YOU WILL NOT BE ABLE TO CHANGE YOUR VOTE.

To vote, please follow the instructions provided in the Voting Notice & Instructions.



*Welcome APFA member.*

### Please select one of the following candidates for APFA National President:

| | |
|---|---|
| • Lori Bassani | *(phone: press 1)* |
| • Steven Baumert | *(phone: press 2)* |
| • Kimberly Goesling | *(phone: press 3)* |
| • Patrick Hancock | *(phone: press 4)* |
| • Andrea S. Jones | *(phone: press 5)* |
| • Brian Morgan | *(phone: press 6)* |
| • Bob Ross | *(phone: press 7)* |
| • Rock Salomon | *(phone: press 8)* |

### Please select one of the following candidates for APFA National Vice President:

| | |
|---|---|
| • Marcus Gluth | *(phone: press 1)* |
| • Nena Martin | *(phone: press 2)* |
| • Samuel Morales | *(phone: press 3)* |

### Please select one of the following candidates for APFA National Secretary:

| | |
|---|---|
| • Nicole Darak | *(phone: press 1)* |
| • Marcy Dunaway | *(phone: press 2)* |
| • Jacob Fuller | *(phone: press 3)* |
| • Donald LeBlanc | *(phone: press 4)* |
| • Jaana Lehtola | *(phone: press 5)* |

### Please select one of the following candidates for APFA National Treasurer:

| | |
|---|---|
| • Craig Gunter | *(phone: press 1)* |
| • Roee Rio Harrari | *(phone: press 2)* |
| • Stefany Jones | *(phone: press 3)* |
| • Nestor Quecuty | *(phone: press 4)* |
| • Eugenio Vargas | *(phone: press 5)* |



# THE
# CONSTITUTION
### OF THE
# ASSOCIATION
### OF
# PROFESSIONAL
# FLIGHT
# ATTENDANTS

*As amended by the APFA Membership*
JUNE 18, 2014

APFA000004

(7) The National Vice President shall be authorized to hire, retain and employ legal counsel as may be required to provide members with representation in the grievance and arbitration process, subject to the approval of the Executive Committee.

(8) The National Vice President shall ensure the training and continuing education of all representatives involved in the grievance and arbitration process.

(9) The National Vice President shall coordinate and chair a Grievance Review Committee to oversee the disposition of grievances.

D. Duties of the National Secretary shall include but not be limited to the following:

(1) The National Secretary shall be responsible for all administrative records of the Association.

(2) The National Secretary shall cause to be kept an administrative record of all officers, representatives and appointees.

(3) The National Secretary shall notify the Board of Directors, the Executive Committee and the OAL Operation Advisory Panel of any convention or meeting.

(4) The National Secretary shall cause to be kept a record of all proceedings at any convention or meeting of the Board of Directors, or at any meeting of the Executive Committee and the OAL Operation Advisory Panel.

(5) The National Secretary shall submit a written report of all meetings of the Executive Committee and the OAL Operation Advisory Panel to the Board of Directors within fifteen (15) days following such meeting.

(6) The National Secretary shall oversee the National Balloting Committee.

(7) The National Secretary shall assist the National President in the preparation of any Annual Report to the members of the APFA.

(8) The National Secretary shall administer Article VII procedures.

(9) The National Secretary shall update and ensure distribution of the APFA Policy Manual.

(10) The National Secretary shall assist in establishing regular training and continuing education programs for representatives of the APFA, and shall maintain the APFA training records of all representatives.

H. In any balloting for National Officer, the candidate receiving the majority of the valid votes cast for an office shall be deemed elected to that office and shall be so notified by the National Secretary.

   (1) If no candidate receives a majority of the valid votes cast for a national office, the NBC shall, within ten (10) days following the Canvassing Date, prepare and send to the membership a run-off ballot containing the names of the two (2) candidates receiving the highest number of valid votes cast.

   (2) The candidate receiving the majority of valid votes cast for an office in the runoff election shall be deemed elected to that office and be so notified by the National Secretary.

I. In any balloting for Base Representative, the candidate receiving the highest number of valid votes cast for a position shall be deemed elected to that position and be so notified by the National Secretary.

J. In the event that a tie exists in the balloting for a Base Representative, a runoff balloting shall be accomplished pursuant to the procedures in H of this Section 5.

K. An issue will be considered ratified by the membership if it receives a plurality of the valid votes cast.

L. All ballots and other election materials, notes and records shall be sealed after being counted and certified as provided for herein, and shall remain in the possession of the National Secretary for at least one (1) year from the balloting date in accordance with all appropriate time limits required by Federal law.

M. Should the margin of victory in a ballot count be ten percent (10%) or less and in the event a candidate challenges the accuracy of such ballot count in writing to the National Secretary within fourteen (14) days following the Canvassing Date, a recount shall occur and the APFA shall assume all related costs. Should the margin of victory be greater than ten percent (10%), the cost related to any such recount shall be borne by the candidate challenging the accuracy of the ballot count.

## Section 6.    ELECTION CONTEST FOR OFFICE:

A. Only candidates may contest an election for office.

B. The contestant must file a written complaint with the National Secretary, directed to the NBC, within fifteen (15) days following the Canvassing Date of the ballots.

C. The NBC shall investigate such complaint, and must render its decision concerning the disposition of such complaint no later than thirty (30) days following the Canvassing Date of the ballots.

App. 006
APFA000000046

D. The contestant may appeal any decision rendered by the NBC to the Executive Committee no later than forty-five (45) days following the Canvassing Date of the ballots.

E. The Executive Committee shall consider such appeal and must render its decision concerning such appeal no later than sixty (60) days following the Canvassing Date of the ballots.

F. Should the NBC or the Executive Committee fail to respond to the contestant in the designated time periods, the contestant will be free to pursue his/her LMRDA rights. In any event, the contestant will have satisfied the internal remedies provisions of the LMRDA following the sixty (60) day period provided for in this Section 6.

**Section 7.**    VACANCY IN OFFICE, NATIONAL OFFICERS:

A. In the event of a vacancy in the office of the National President, the National Vice President shall assume the office for the balance of the unexpired term.

B. In the event of a vacancy in the office of the National Vice President, if the unexpired term from the date of the vacancy is more than eighteen (18) months, a membership election shall be held to fill the vacancy in accordance with the time limits provided in Section 2 and Section 5 of this Article VI. The Board of Directors shall appoint an interim National Vice President to serve until the result of the election is known. If the unexpired term of the National Vice President is eighteen (18) months or less, the office shall be filled by appointment by the Board of Directors.

C. In the event of a simultaneous vacancy in the office of the National President and National Vice President, if the unexpired terms from the date of the vacancies are more than eighteen (18) months, a membership election shall be held to fill the vacancies in accordance with the time limits provided in Section 2 and Section 5 of this Article VI. The Board of Directors shall appoint an interim National President and an interim National Vice President to serve until the results of the elections are known. If the unexpired terms are eighteen (18) months or less, the offices shall be filled by appointments by the Board of Directors.

D. In the event of a vacancy in the offices of National Secretary or National Treasurer, if the unexpired term from the date of the vacancy is more than eighteen (18) months, a membership election shall be held to fill the vacancy in accordance with the time limits provided in Section 2 and Section 5 of this Article VI. The Board of Directors shall appoint an interim National Secretary or

APP. 007
APFA000047

Cindy Horan                                                July 27, 2017
                        Washington, D.C.

Page 1

```
 1             IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF TEXAS

 3                    FORT WORTH DIVISION

 4      - - - - - - - - - - - - - - - X

 5      R. ALEXANDER ACOSTA,            :

 6      Secretary of Labor             :

 7          Plaintiff,                 :    Civil Action No.

 8             v.                      :    4:16-cv-1057-A

 9      ASSOCIATION OF PROFESSIONAL    :

10      FLIGHT ATTENDANTS,             :

11          Defendant.                 :

12      - - - - - - - - - - - - - - - X

13                          Washington, D.C.

14                          Thursday, July 27, 2017

15              Deposition of CINDY HORAN, a witness

16      herein, called for examination by counsel for

17      Plaintiff in the above-entitled matter, pursuant to

18      notice, the witness being duly sworn by ANGELA K.

19      MCCULLOUGH, RPR, a Notary Public in and for the

20      District of Columbia, taken at the offices of

21      Bredhoff & Kaiser PLLC, 805 15th Street, Northwest,

22      Suite 1000, Washington, DC, at 9:52 a.m., Thursday,
```

Cindy Horan                                                    July 27, 2017
                        Washington, D.C.

```
                                                        Page 6
  1                    P R O C E E D I N G S

  2   Whereupon,

  3                     CINDY HORAN,

  4   called as a witness by counsel for the Plaintiff, and

  5   having been duly sworn by the Notary Public, was

  6   examined and testified as follows:

  7             EXAMINATION BY COUNSEL FOR PLAINTIFF

  8   BY MR. STOLTZ:

  9        Q.    Good morning.  My name is Brian Stoltz.

 10   And I am the attorney for the Secretary of Labor,

 11   which is the Plaintiff in this case.

 12             Can you please tell us your name?

 13        A.    Cindy Horan.

 14        Q.    Thank you.  And, Ms. Horan, have you ever

 15   given testimony at a deposition before?

 16        A.    No.

 17        Q.    I'm going to cover just a few of the sort

 18   of deposition 101.  You understand that the court

 19   reporter, just before we started, swore you in under

 20   oath?

 21        A.    Yes.

 22        Q.    And you understand that that means that
```

Cindy Horan                                                                July 27, 2017
                            Washington, D.C.

1    that's fine.  Just let me know, and we'll arrange

2    that.  Okay?

3        A.    Okay.

4        Q.    Is there any reason, as we sit here this

5    morning, that you are not able to give truthful and

6    accurate testimony?

7        A.    No.

8        Q.    Are you an employee of American Airlines?

9        A.    Yes.

10        Q.    And what's your job at American Airlines?

11        A.    I'm a flight attendant.

12        Q.    How long have you been a flight attendant?

13        A.    25 1/2 years.

14        Q.    All for American Airlines at that time?

15        A.    Yes.

16        Q.    Now, this lawsuit -- one of the parties to

17    the lawsuit is the Association of Professional Flight

18    Attendants; is that right?

19        A.    Yes.

20        Q.    Also known as APFA?

21        A.    Yes.

22        Q.    And tell me, what is the relationship

App. 010

Cindy Horan                                                        July 27, 2017
                           Washington, D.C.

Page 9

1     between American Airlines and APFA?

2          A.     APFA is the union for the flight

3     attendants at American Airlines.

4          Q.     And are you a member of APFA?

5          A.     Yes.

6          Q.     Is every flight attendant a member of

7     APFA?

8          A.     No.

9          Q.     So how does that work?  You have to agree

10    to become a member?

11         A.     Yes.  You have to sign a membership card.

12         Q.     And do you know what percentage of the

13    flight attendants at American Airlines are members of

14    the union?

15         A.     I do not.

16         Q.     The union, though, engages, I take it, in

17    collective bargaining on behalf of all the flight

18    attendants; is that right?

19         A.     Yes, they do.

20         Q.     Now, so you've been a member of the APFA

21    essentially since you started as a flight attendant;

22    is that right?

Cindy Horan                                                July 27, 2017
Washington, D.C.

Page 13

1    membership, what is the highest governing authority

2    for the union?  Is it the board of directors?

3        A.    Not sure how to answer that because the

4    board of directors meet, and they vote on things that

5    will affect the members.  But as far as ratifying a

6    contract, that's done by the membership.  And the

7    national officers have meetings with the company, you

8    know, like, the -- the executive people of the

9    company, presidents, vice presidents.

10       Q.    Okay.  So certain things might be

11   negotiated by the officers and then submitted to the

12   union membership for ratification?

13       A.    Correct.

14       Q.    What is the -- I understand there's

15   something called the National Balloting Committee; is

16   that right?

17       A.    The National Ballot Committee.

18       Q.    National Ballot Committee.  Thank you.

19   And what is the National Ballot Committee?

20       A.    The committee consists of five members who

21   have been elected by the board of directors to

22   oversee any vote that the membership has to have.

Cindy Horan                                                          July 27, 2017
                           Washington, D.C.

1       Q.      And the -- the five members of the board,

2    is one of those persons a chair of the board?

3       A.      Correct.

4       Q.      And is that you?

5       A.      Yes.

6       Q.      And the other four members are at-large

7    members, essentially?

8       A.      Correct.

9       Q.      And when the National Ballot Committee

10   acts, does it -- for instance, if it's -- the

11   National Ballot Committee is going to conduct an

12   election, does it act by voting amongst itself?  How

13   does it make decisions?

14      A.      When there is a vote to be had, we are

15   told by -- from -- the national secretary informs the

16   National Ballot Committee that they will need to have

17   an election whether it's an election for officers or

18   whether it's a referendum.

19      Q.      And once the National Ballot Committee is

20   told that there need to be an election -- and

21   let's -- let's focus here on, say, for officers.

22   There needs to be an election for officers.  The

Cindy Horan                                                    July 27, 2017
                        Washington, D.C.

Page 43

1      Q.    But, at the same time, nobody ever

2    explained to them what it meant, so, as a practical

3    matter, they didn't do it; is that right?

4      A.    Correct.

5      Q.    So is there anybody else at the union

6    besides you and the other four members of the

7    National Ballot Committee that had a login to the

8    MRNS that had a capability of collecting these vote

9    digests?

10     A.    No.

11                 (Exhibit No. 1 was marked for

12                 identification.)

13   BY MR. STOLTZ:

14     Q.    Ms. Horan, I've given you a document that

15   will be Exhibit 1 for this deposition.  And it's

16   called "Defendant APFA's Answers to Plaintiff DOL's

17   First Set of Interrogatories."

18                 Do you see that?

19     A.    Yes.

20     Q.    And if you flip to the eighth page of

21   Exhibit 1, there's a verification.  Do you see that?

22     A.    Yes.

Cindy Horan                                                    July 27, 2017
                        Washington, D.C.

Page 44

1      Q.     And it says, "I, Cindy Horan, do verify

2   under penalty of perjury that I've read Defendant's

3   answer to Plaintiff's Interrogatory No. 3 and know

4   its contents."

5            Do you see that?

6      A.     Yes.

7      Q.     And you signed this verification, correct?

8      A.     Correct.

9      Q.     Now, if you flip back to page 5 of

10  Exhibit 1, it lists interrogatory No. 3, which asks

11  to describe the ways in which candidates' observers

12  were permitted to observe any aspect of the election

13  essentially.

14           And let me ask you this:  What does it

15  mean to be a candidate's observer during a union

16  election such as this January 2016 election?

17     A.     There are two different types of candidate

18  observers.  We offer one type which is to be at the

19  ballot count.  So a candidate can be at the ballot

20  count along with two other people that he designates.

21  Or if the candidate cannot be at the ballot count,

22  they can have three designated observers.

Cindy Horan                                                    July 27, 2017

Washington, D.C.

Page 45

1              The other type of candidate observer would

2    be for the e-mails that I send out daily with the

3    members that have gone from an ineligible to an

4    eligible status.  A candidate or a slate, if they do

5    not wish to receive the daily e-mails, they can

6    designate someone -- another member in good standing

7    to be their observer to receive these e-mails.

8         Q.    Interrogatory No. 3 in the answer, there's

9    a numbered list of five items here.  In my

10   understanding, these are five different ways that

11   observers were permitted to observe some different

12   aspect of the election; is that right?

13        A.    Correct.

14        Q.    And I want to make sure.  Is this -- is

15   this the complete list of observer activities that

16   were provided?  Is there anything else that observers

17   were allowed to do that's not on this list under

18   interrogatory No. 3 on Exhibit 1?

19        A.    No.

20              (Exhibit No. 2 was marked for

21              identification.)

22   BY MR. STOLTZ:

Cindy Horan                                                        July 27, 2017
                              Washington, D.C.

Page 54

1    system?

2         A.    Correct.

3         Q.    And one of those capabilities that you can

4    bestow is the ability for that administrator to, in

5    turn, log in and collect these vote digests?

6         A.    Yes.

7         Q.    But during the January 2016 election, you

8    did not activate that capability for any other

9    persons?

10        A.    Correct.

11        Q.    And was there a reason for not doing that,

12   or is it just something that didn't ever occur to

13   anybody?

14        A.    Never occurred.

15        Q.    In Exhibit 1, the interrogatory response,

16   on page 6, item 4 is a discussion that says,

17   "Observers were permitted to attend the APFA ballot

18   county at APFA headquarters."

19             Do you see that?

20        A.    Yes.

21        Q.    And when you say "headquarters," that's

22   the building in Euless, Texas; is that right?

Cindy Horan                                                    July 27, 2017
Washington, D.C.

Page 55

1          A.       Correct.

2          Q.       And can you just describe for me -- on

3    the -- the day or the night when the election period

4    is concluding, describe the scene there at the -- at

5    the candidate headquarters.  What's going on?

6          A.       The ballot closes at 10 a.m., Central

7    Time.  We have a fairly large room that's called the

8    "Unity Pays" Room where we hold the ballot count.

9    Any member in good standing may attend this.  And we

10   did have several.

11                 When they enter into the building to begin

12   with, they have to sign in.  And then they're allowed

13   to go into the "Unity Pays" Room where there are two

14   sheets.  One is a sign-in sheet.  And we do have a

15   committee member there checking to make sure that

16   they are a member in good standing, they're

17   dues-eligible, you know.  And then we also have a

18   rules and conduct of an election that they read and

19   they sign that we maintain.

20                 At 10 o'clock, the system cuts off all

21   voting.  And, shortly thereafter, the committee

22   members all gather into that room.  I have my

Cindy Horan                                                    July 27, 2017
                          Washington, D.C.

1    APFA-issued laptop computer that is connected to a

2    huge screen so that anyone in the room then can see

3    the results.  I log into it as -- as a chairperson.

4    I then have to have a second committee person co-log

5    in with their special login for this.  And then I can

6    hit "officiate results."

7           At which time, it shows me a screen that

8    just gives me a place where I can put observers'

9    names.  The names that are usually put on that is any

10   candidate that is there that's listed for -- for

11   that, their observer, the committee members, the

12   National Ballot Committee members that are there.  I

13   do have an IT person there with me in case I have a

14   problem with the computer to the -- to the monitor up

15   there.

16          And then I hit "ballot count," and it

17   shows up on my screen and immediately then pops up on

18   the big screen.  And it gives the official results.

19   I then go through and I read the results.  And then I

20   let the galley know that we will be making copies.  I

21   send one of the committee members to one of the

22   printers.  We print off the official results.  We

Cindy Horan                                                    July 27, 2017
                           Washington, D.C.

Page 57

1   have any person who is listed as an observer sign and

2   date it.  We keep that one for our records.  And then

3   the rest are handed out to any galley -- gallery

4   members.

5           And there's two forms that we can do.  We

6   do the official one.  And then we can also break it

7   down by base.  So those are available.

8           After all of that is done and everyone

9   leaves, then I start the creation of a hotline to go

10  out that gets sent out to any member that's signed up

11  for it.  And it also gets posted on the APFA website.

12      Q.    Okay.  Thank you.

13      A.    Mm-hmm.

14      Q.    I'm going to ask just a few questions

15  about what you said.  The room you're actually in,

16  the "Unity Pays" Room; is that right?

17      A.    Mm-hmm.

18      Q.    Is that -- how big is it?  Is it, like, as

19  big as a racket ball court?  Is it --

20      A.    It's probably a little shorter than this,

21  but it's wider than this room.

22      Q.    Okay.  And we're in a big conference room.

Alderson Court Reporting

Cindy Horan                                                        July 27, 2017
                        Washington, D.C.

                                                                  Page 58

1        A.    Okay.  So -- yeah, you know -- I'm sorry.

2              MR. ROTH:  Should have done a video

3    deposition.

4    BY MR. STOLTZ:

5        Q.    I'm just trying to get a sense --

6        A.    I didn't think about that.

7              We do meetings in there.  We will set up.

8    It's a room that's big enough to hold four or five

9    large tables across with chairs.  And then we can put

10   chairs around the circumference of the room.  And in

11   the very front is where I sit with my laptop.  And

12   then there is a big white screen that we can project

13   onto.

14       Q.    So for the ballot count during the January

15   2016 election, how many people would you estimate?

16   Were there a couple dozen people?

17       A.    I would say approximately -- we -- we

18   probably had around 20 -- between 20 and 30 people.

19       Q.    Okay.  So at the very least, it's a room

20   that can comfortably hold 20 or 30 people?

21       A.    Yes.

22       Q.    And you sit at the front.  And is there

Cindy Horan                                                July 27, 2017

Washington, D.C.

1    some kind of desk there or a table?

2        A.    There is.  During this election, I sat

3    facing the gallery with my computer like this, so

4    that they could -- with the back of my computer

5    towards the gallery because of inputting my user and

6    my pins so that the gallery could not ever see that.

7        Q.    Okay.  And so that -- you mentioned that

8    your laptop was shared with a large screen so that

9    the members could then see what was on your laptop.

10            I take it, from what you just said,

11   though, that you didn't share your laptop with the

12   screen during this whole process while you were, for

13   example, inputting your own password, did you?

14       A.    No, I did not.

15       Q.    Okay.  So you went through the process.

16   And you -- eventually the process resulted in a --

17   some kind of image that had names of candidates and

18   votes, correct?

19       A.    Correct.

20       Q.    Is that the -- is that when you shared

21   your laptop with the screen so that everybody could

22   see?

Cindy Horan                                                July 27, 2017

Washington, D.C.

Page 60

1      A.      Yes.

2      Q.      So in terms of what a person in the

3  audience -- an observer in the "Unity Pays" Room

4  would have seen during this process, they would have

5  seen you up at a table with your laptop typing on

6  your laptop, right?

7      A.      Correct.

8      Q.      They couldn't actually see what were you

9  typing or what screen you were at because the laptop

10  was turned toward you, though, correct?

11      A.      Correct.

12      Q.      And I take it probably, during this time,

13  you gave some -- or somebody probably gave some

14  explanation of, We're in the process of pulling the

15  results or something like that?

16      A.      What I do is I explain.  And I would tell

17  them I'm now going to be logging in.  Then I need a

18  co-log in.  Then that's when I ask, Okay, who wants

19  to be listed as an observer.  I put their names in,

20  ask them to spell it.  And then I'm like, Okay, now,

21  I'm going to officiate the results.  I hit the

22  button, and then I hit this -- another little button

Cindy Horan                                                        July 27, 2017
                              Washington, D.C.

Page 61

1    that they've set up for me.  And it throws it right

2    up.

3        Q.    Okay.  So the -- the observers see you

4    doing this.  They see another person come log in.

5    You say that you're going to hit the button.  And

6    then after you hit the button, you then transfer it

7    onto the screen, correct?

8        A.    Correct.

9        Q.    And the members then can see how many

10   votes each candidate got, correct?

11       A.    Correct.

12                       (Exhibit No. 4 was marked for

13                       identification.)

14   BY MR. STOLTZ:

15       Q.    I've handed you a document that will be

16   marked as Exhibit 4.  And it says -- at the top, it

17   says "BP - APFA Voting System" at the very top.  And

18   then it says "APFA National Officer Election Official

19   Results."

20              Do you see that?

21       A.    Yes.

22       Q.    So do you recognize -- what is this

Cindy Horan                                    July 27, 2017
Washington, D.C.

Page 62

1    document, Exhibit 4?

2         A.    This is the official result page that

3    comes up when I hit for the result of the ballot

4    count that projects then up onto the big screen.

5         Q.    Okay.  So Exhibit 4 -- and I realize that

6    the copy we have has signatures at the bottom.

7         A.    Yes.

8         Q.    But let's assume that those signatures are

9    not there.

10              Is Exhibit 4 the -- the actual thing that

11   people see on the screen in the "Unity Pays" Room

12   during the vote count?

13        A.    Yes.

14        Q.    And is there anything other than Exhibit 4

15   that observers see on the screen in the "Unity Pays"

16   Room during the vote count?

17        A.    After we show them this, they usually like

18   to see the base-by-base breakdown.  And then we will

19   pull that up, and then we will also print that for

20   them.

21        Q.    So the base-by-base breakdown, is it a

22   similar sheet to Exhibit 4 except instead of just

Cindy Horan                                          July 27, 2017
Washington, D.C.

Page 63

1    giving the total results, it shows how many votes

2    each candidate received in each of the bases?

3        A.    Correct.

4        Q.    So then, if I understand correctly,

5    Exhibit 4 has been projected on a screen from your

6    laptop.  These names down at the bottom of the first

7    page of Exhibit 4, where it says Nena Martin,

8    witness, Marcy Dunaway, witness -- it goes on --

9    these are the names that you typed in during this

10   process who were present, and you say, Who wants to

11   be an observer, and you type those in; is that right?

12       A.    Correct.

13       Q.    So after Exhibit 4 is projected onto this

14   screen, you then print copies of Exhibit 4; is that

15   right?

16       A.    Correct.

17       Q.    And you hand out copies to people who want

18   them in the room; is that right?

19       A.    That's correct.

20       Q.    And then there's one copy that you

21   actually have the observers sign, correct?

22       A.    Correct.

Cindy Horan                                                    July 27, 2017
Washington, D.C.

Page 64

1        Q.    And Exhibit 4 is that document that you

2    actually have the observers sign, correct?

3        A.    Correct.

4        Q.    Is there anything else that you can think

5    of that's noteworthy that happens in the "Unity Pays"

6    Room?  Anything else that observers do in that room?

7        A.    Observers are then allowed, after the

8    ballot count, to ask the ballot committee to see who

9    voted, who did not vote, the ineligible list.  And no

10    one did.

11        Q.    So other than obviously seeing the results

12    and then the ability to at least ask for the -- the

13    who voted, who did not vote, anything else that

14    observers can do in this "Unity Pays" Room?

15        A.    No.

16        Q.    Now, the union has a process for

17    candidates to protest an election result; is that

18    correct?

19        A.    Yes.

20        Q.    Okay.  And can you tell us just very

21    generally what is that process.

22        A.    A candidate has 15 days following the

Cindy Horan                                                    July 27, 2017
                        Washington, D.C.

Page 67

1        Q.       I've handed you a document marked
2    Exhibit 5.   Do you recognize what Exhibit 5 is?
3        A.       Let's see.   Samuel Morales' election
4    complaint.
5        Q.       So one thing that's confusing to me at
6    least about Exhibit 5 is it's dated January 22nd,
7    2015.   But the election that is referenced in
8    paragraph 1 is the January 9th, 2016 election.   Do
9    you see that?
10        A.       Yes.   He's misdated.
11        Q.       Okay.   So Mr. Morales submitted this --
12    would it have been on January 22nd, 2016?
13        A.       Correct.
14        Q.       And so this document, Exhibit 5,
15    ultimately ended up in your hands as the chair of the
16    National Ballot Committee; is that right?
17        A.       Correct.
18        Q.       And, at that point, I think you -- you
19    told me earlier what the general procedure was.   But,
20    at that point, you commenced an investigation; is
21    that right?
22        A.       Yes.

App. 028

Cindy Horan                                                          July 27, 2017
Washington, D.C.

Page 69

1        Q.      Is Exhibit 6 the -- the National Ballot

2    Committee's letter stating what its decision was with

3    respect to Mr. Morales' protest?

4        A.      Yes.

5        Q.      And if you look at page 4 of Exhibit 6,

6    you signed this letter, correct?

7        A.      Correct.

8        Q.      And let me ask you.  On page 1 of

9    Exhibit 6, you state that, "The National Ballot

10   Committee has completed its investigation of your

11   national vice president election complaint that was

12   received by the APFA national secretary on January

13   22nd, 2016."

14              Do you see that?

15       A.      Yes.

16       Q.      So can you tell me specifically about what

17   occurred in the investigation of Mr. Morales'

18   complaint that is referenced on -- in the first

19   sentence of Exhibit 6.

20       A.      I don't understand what you're asking.

21       Q.      I'm sorry.  There's -- what happened in

22   the investigation of Mr. Morales' complaint?  You've

Cindy Horan                                            July 27, 2017
                    Washington, D.C.

1    example, if you had your laptop at your house and you

2    had another -- say, you decided to do this at your

3    house.  Could you log in from your house, and have

4    somebody else there, and obtain the results from your

5    house if, for someone reason, the "Unity Pays" Room

6    wasn't available?

7         A.    I could.

8         Q.    That's -- my question is when you log in,

9    you're talking about logging into the election

10   server, correct?

11        A.    Correct.

12        Q.    And to do that, you go -- you get on a

13   computer, and you type in your -- whatever address

14   you go to, and then you input your credentials,

15   correct?

16        A.    Correct.

17        Q.    And I'm just trying to confirm.  My

18   understanding is you can do that from any computer,

19   correct?

20        A.    Correct.

21        Q.    You don't have to be in the "Unity Pays"

22   Room to do that.  You could have -- if somebody said,

App. 030

Cindy Horan                                                July 27, 2017
Washington, D.C.

Page 87

1    Hey, let's do the -- the election count at a bar just

2    instead, we could have done it there, correct?

3        A.    Correct.

4        Q.    So the counting of the ballots, though --

5    are the ballots counted -- BallotPoint counts the

6    ballots, correct -- or performs the computer

7    functions that tally the ballots; is that right?

8             MR. ROTH:  You have to give a verbal

9    response.

10            THE WITNESS:  I know.  I would say, yes,

11   it's their program that counts it.

12   BY MR. STOLTZ:

13       Q.    Okay.  In other words, you don't

14   actually -- you and nobody else at the union actually

15   counts the ballots, correct?

16       A.    Correct.

17       Q.    As far as you know, that's done at

18   Portland or wherever BallotPoint's computers are

19   located?

20       A.    Correct.

21       Q.    And then they essentially send the results

22   to you to whatever computer you've logged in on?

Cindy Horan                                                        July 27, 2017
                              Washington, D.C.

Page 101

1        Q.    And do you recall any discussion at that

2    meeting of these vote digests?

3        A.    No.

4        Q.    Turning back to Exhibit 7 of page -- page

5    8, there's a paragraph that says, "After the ballot

6    tally, the 'Who Voted' and 'Who Did Not Vote' lists

7    were available for users to view.  No one asked to

8    view the lists.  Samuel Morales did not request to

9    view the list.  Morales left the union hall

10   immediately after the ballot count was certified."

11             Is that accurate?

12       A.    Yes.

13       Q.    Were the candidates' observers in this

14   January 2016 election provided any opportunity to

15   conduct logic or accuracy tests on the BallotPoint

16   system?

17       A.    No.

18       Q.    Were candidate observers provided any

19   opportunity to physically inspect the BallotPoint

20   system?

21       A.    No.

22       Q.    Exhibit 4 is the official results from the

Cindy Horan                                                    July 27, 2017
                    Washington, D.C.

Page 102

1    January 2016 election.  Do you see that?

2         A.    Yes.

3         Q.    Were candidates' observers provided any

4    opportunity to obtain an assurance that the results

5    listed on this Exhibit 4 did, in fact, come from

6    BallotPoint?

7         A.    I don't really understand.

8         Q.    Well, let me ask it this way:  You earlier

9    explained that, in the "Unity Pays" Room, on the

10   final day of the election, Exhibit 4 was projected

11   onto a screen.  And that's how the observers and the

12   candidates found out who won or didn't win the

13   election, right?

14        A.    Correct.

15        Q.    And I'm just asking you, were the

16   candidates' observers provided any way to know that

17   this Exhibit 4 actually did come from BallotPoint?

18   In other words, how did they -- did they have any way

19   of knowing whether this was just something that

20   somebody else typed up and put up on the screen?

21        A.    No.

22              MR. STOLTZ:  Can we go off the record for

```
 1              CERTIFICATE OF REPORTER

 2   UNITED STATES OF AMERICA ) ss.:

 3   DISTRICT OF COLUMBIA     )

 4        I, ANGELA MCCULLLOUGH, the officer before whom

 5   the foregoing proceedings were taken, do hereby

 6   certify that the foregoing transcript is a true and

 7   correct record of the proceedings; that said

 8   proceedings were taken by me stenographically to the

 9   best of my ability and thereafter reduced to

10   typewriting under my supervision; and that I am

11   neither counsel for, related to, nor employed by any

12   of the parties to this case and have no interest,

13   financial or otherwise, in its outcome.

14

15

16              angela K. McCullough

17              Notary Public in and for

18              The District of Columbia

19

20   My commission expires: 1/31/2020

21

22
```

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

R. ALEXANDER ACOSTA, Secretary of
Labor,

      Plaintiff,

v.

ASSOCIATION OF PROFESSIONAL
FLIGHT ATTENDANTS,

      Defendant.

Civil Action No. 4:16-cv-1057-A

## DEFENDANT APFA'S ANSWERS TO PLAINTIFF DOL'S FIRST SET OF INTERROGATORIES

Defendant, the Association of Professional Flight Attendants ("APFA"), hereby answers the first set of interrogatories propounded on it by the Plaintiff, R. Alexander Acosta, acting in his official capacity as the Secretary of Labor.

APFA has not completed its investigation of all the facts relating to this litigation. All of the objections and answers contained herein are based only on the information, documents, and sources that are presently available and known to APFA, based on a reasonable and ongoing investigation of available sources. APFA expressly reserves its right to supplement, clarify, revise, or correct any or all of the objections and answers, and to supplement its objections, and answers, as well as its assertions of privileges, as appropriate.

APFA objects generally to Plaintiff's interrogatories to the extent they call for information protected by the attorney-client privilege or the attorney work-product doctrine.



Each of Plaintiff's interrogatories is set forth in bold preceding APFA's answer and/or objections to that interrogatory.

**INTERROGATORY NO. 1:  Describe in detail the complete factual basis for the APFA's denial of the contention in paragraph 27 of Plaintiff's original complaint that the violation of 29 U.S.C. § 481(a) alleged by Plaintiff in the original complaint may have affected the outcome of the APFA's election for the offices of National President, National Vice President, National Secretary, and National Treasurer at issue in this action.**

At this point in time, the facts known to APFA which support this denial are as follows:

1.      In his internal union complaint, *see* DOL 0087, Samuel Morales stated no basis for his "feel[ing]" that APFA violated the ballot secrecy provision of the LMRDA.  Nor did he assert (much less point to any evidence) that the secrecy of any union member's vote had actually been compromised, or that any member had claimed that a concern about ballot secrecy impacted how, or if, that member voted.

2.      In his subsequent complaint to the DOL, *see* DOL 0001, Mr. Morales likewise stated no basis for his "belie[f]" that APFA violated the ballot secrecy provision of the LMRDA. Nor did he assert (much less point to any evidence) that the secrecy of any union member's vote had actually been compromised, or that any member had claimed that a concern about ballot secrecy impacted how, or if, that member voted.

3.      The Complaint Interview Questionnaire prepared by DOL investigator Keith King, *see* DOL 0139, states that Mr. Morales was interviewed by the DOL on March 8 and 17, 2016, and that in his interview Mr. Morales stated "that he couldn't single out any particular evidence to support his statement that he felt that APFA violated . . . the ballot secrecy provision of [the LMRDA]."

4.      In his deposition, Stephen J. Willertz testified that, to his knowledge, during the course of the DOL's investigation, neither Mr. Morales nor any other union member expressed a

2

**App. 036**

concern that—to quote paragraph 21 of the DOL's Complaint in this matter—"[t]he [BallotPoint] system stores and maintains member identifying information and voting records on two servers in a way that could allow individuals with access to both of the servers to identify how a member voted." *See* Willertz Dep. at 45-47.

5.    In his deposition, Mr. Willertz further testified that based on the evidence "noted" in the DOL's investigation, "[t]here is just no way" that voters in the challenged APFA election could have made "any sort of assessment as to whether or not votes and voters could be connected." *See* Willertz Dep. at 41-42.

6.    Along the same lines, an Interrogatory Response signed by Mr. Willertz states that "BallotPoint's election system is not accessible for inspection by members or their agents; moreover, its complicated highly-technical design makes it highly unlikely that a union member could discern whether it was functioning to only count votes from eligible voters and to accurately count those votes," *see* Responses at pp. 9-10, and Mr. Willertz admitted in his deposition testimony that the same considerations make it "highly unlikely, if not impossible, that a member could discern that there is data on the two servers that could be connected up to link a voter with the vote," *see* Willertz Dep. at 226-27.

7.    A Statement of Reasons disposing of a prior election challenge brought by Mr. Morales, *see* Willertz Dep., Exh. 18, coupled with the two election complaints filed by Mr. Morales in this matter, *see* subparagraphs 1-2 above, show that Mr. Morales challenged the national officers' election at issue here on secret ballot grounds because the DOL had planted a seed in Mr. Morales' head that the BallotPoint system did not adequately ensure ballot secrecy, and not because Mr. Morales had an independent feeling or belief that such was the case.

3

**App. 037**

Discovery in this action is ongoing, and APFA anticipates that it will be able to develop additional facts in support of its denial in the course of that discovery.

**INTERROGATORY NO. 2: Describe in detail the complete factual basis for the APFA's denial of the contention in paragraph 27 of Plaintiff's original complaint that the violation of 29 U.S.C. § 481(c) alleged by Plaintiff in the original complaint may have affected the outcome of the APFA's election for the offices of National President, National Vice President, National Secretary, and National Treasurer at issue in this action.**

At this point in time, the facts known to APFA which support this denial are as follows:

1.      The facts and opinions set out in Part III.B of Curt Stapleton's expert report, which APFA provided to the Secretary on June 30, 2017, and which Mr. Stapleton likely will be called upon to elaborate on in his forthcoming deposition.

2.      The facts and opinions summarized in Part (ii)(6) of the Rule 26(a)(2)(C) Disclosure pertaining to Gerry Feldkamp's anticipated expert testimony, which APFA provided to the Secretary on June 30, 2017, and which Mr. Feldkamp likely will be called upon to elaborate on in his forthcoming deposition.

3.      Mr. Feldkamp, Mike Baum, and Bob Thompson, the three BallotPoint engineers with privileged access to the BallotPoint system, are anticipated to confirm that they did not engage in any form of misconduct or tampering with the software application related to the recordation and counting of votes in the challenged APFA election. And BallotPoint's business reputation and track record, among other factors, stand as independent confirmation of this fact.

4.      In his deposition, Mr. Willertz testified that "I don't have any evidence that the results [of the election] are inaccurate or wrong." *See* Willertz Dep. at 249.

5.      In his deposition, Mr. Willertz further testified that a "spot check" of the underlying vote data in the election disclosed nothing irregular. *See* Willertz Dep. at 265-66.

App. 038

6.      There are no facts, and the DOL has cited none, that raise a reasonable possibility that the alleged violation of 29 U.S.C. § 481(c) may have affected the outcome of the challenged APFA National Officer Elections.

Discovery in this action is ongoing, and APFA anticipates that it will be able to develop additional facts in support of its denial in the course of that discovery.

**INTERROGATORY NO. 3:  Describe in detail all ways in which candidates' observers were permitted to observe any aspect of the APFA's election for the offices of National President, National Vice President, National Secretary, and National Treasurer at issue in this action, including how and when the candidates and/or their observers were notified of any observer opportunities.**

1.      Candidates were permitted to inspect (but not copy) the membership list once within the thirty (30) days prior to the mailing of the ballots.  Candidates are permitted to inspect (but not copy) the membership list and a list of the voting members from the previous National Officer elections once within forty-five (45) days prior to the mailing or electronic availability of the ballots.  Candidates were informed of these opportunities through the form candidate letter sent by Cindy Horan to all candidates.  *See* DOL0397-DOL0401.  In addition, the complainant in this matter, Samuel Morales, was advised, in a December 24, 2015 email from National Ballot Committee Chairperson Cindy Horan, that he could review a list of eligible voters and a list of ineligible members at the ballot count.  *See* APFA-00000252, APFA-00000262.

2.      Observers were permitted to observe the preparation and mailing of the ballots (that is, the voting credentials prepared and mailed by Allied Media).  Candidates were informed of this opportunity through the form candidate letter sent by Cindy Horan to all candidates.  *See* DOL0397-DOL0401.

3.      Observers were provided by the APFA National Ballot Committee with a daily list of the APFA members who became eligible to vote after the ballots (that is, the voting

5

credentials prepared and mailed by Allied Media) had been mailed.  Observers had 48 hours to

challenge the eligibility of any newly eligible member.  Candidates were informed of this

opportunity through a candidate letter sent by Cindy Horan to all candidates on December 10,

2015.  *See* APFA-00000290-APFA-00000291.  Candidates were also informed of this

opportunity in the APFA Policy Manual, § 14.O.  *See* APFA-00000216.

4.    Observers were permitted to attend the APFA ballot count at APFA Headquarters.
Candidates were informed of this opportunity through the form candidate letter sent by Cindy
Horan to all candidates.  *See* DOL0397-DOL0401.  Candidates were also informed of this
opportunity in the APFA Policy Manual, § 14.Q.  *See* APFA-00000218- APFA-00000219.  In
addition, any member in good standing was permitted to observe the ballot count from gallery
space.  Members were informed of this opportunity in the APFA Policy Manual, § 14.Q.  *See*
APFA-00000219.

5.    Candidates were permitted to request to view the Who Voted and Who Did Not

Vote Reports after the ballot count.  Information regarding a candidate's right to view these

reports was not communicated to candidates in a formal communication, but would be shared

with candidates in response to candidate inquires regarding which members voted.  In addition,

the complainant in this matter, Samuel Morales, was advised, in a December 24, 2015 email

from National Ballot Committee Chairperson Cindy Horan, that he could review a list of the

members who voted at the ballot count.  *See* APFA-00000252, APFA-00000262.

6

Respectfully submitted,

ANDREW D. ROTH*
D.C. Bar No. 414038
ROBERT ALEXANDER*
D.C. BAR No. 465673
ADAM BELLOTTI*
D.C. Bar No. 1020169
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St. N.W., Tenth Floor
Washington, D.C. 20005
Tel: (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
Email: ralexander@bredhoff.com
Email: abellotti@bredhoff.com

SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, TX 75214
Tel: (214) 637-0750
Fax: (214) 637-0730
Email: denison@baabdenison.com

Attorneys for Defendant Association
of Professional Flight Attendants

* Admitted Pro Hac Vice

Dated: July 12, 2017

7

App. 041

### Verification

I, Cindy Horan, do verify under penalty of perjury that I have read Defendant's Answer to Plaintiff's Interrogatory No. 3 and know its contents. I am informed and believe that the factual matters set out in the above response are true and accurate to the best of my knowledge, information, and/or belief.*

Cindy Horan
APFA National Ballot Committee Chairperson

* The APFA's Answers to Interrogatories 1 and 2, which are in the nature of contention interrogatories, have been prepared by undersigned counsel on the preceding page.

DATED: July 10, 2017

8

App. 042

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 12th day of July, 2017, the above and

foregoing document was served on Plaintiff's counsel of record electronically by email

transmission and by USPS, First Class mail, postage prepaid, as authorized by Federal Rule of

Civil Procedure 5(b), addressed to the following:

Brian W. Stoltz
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:    214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

ADAM BELLOTTI

9

**App. 043**

# APFA
## ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS

**National Officer Election**

**Official Results**

Ballot ending: 01/09/2016 10:00:00 (Central)

The ballots were cast and tallied as follows.

| TOTAL | | |
|---|---|---|

| Please select one of the following candidates for APFA National President: | Total | Percent |
|---|---|---|
| Lori Bassani | 599 | 6.41 |
| Steven Baumert | 1168 | 12.50 |
| Kimberly Goesling | 449 | 4.80 |
| Patrick Hancock | 1750 | 18.72 |
| Andrea S. Jones | 53 | 0.57 |
| Brian Morgan | 1143 | 12.23 |
| Bob Ross | 3151 | 33.71 |
| Rock Salomon | 1034 | 11.06 |
| Total | 9347 | |

| Please select one of the following candidates for APFA National Vice President: | Total | Percent |
|---|---|---|
| Marcus Gluth | 2632 | 28.91 |
| Nena Martin | 4779 | 52.49 |
| Samuel Morales | 1693 | 18.60 |
| Total | 9104 | |

| Please select one of the following candidates for APFA National Secretary: | Total | Percent |
|---|---|---|
| Nicole Darak | 2572 | 28.16 |
| Marcy Dunaway | 3301 | 36.14 |
| Jacob Fuller | 1892 | 20.71 |
| Donald LeBlanc | 375 | 4.11 |
| Jaana Lehtola | 994 | 10.88 |
| Total | 9134 | |

| Please select one of the following candidates for APFA National Treasurer: | Total | Percent |
|---|---|---|
| Craig Gunter | 3344 | 36.52 |
| Rose Rio Harrari | 147 | 1.61 |
| Stefany Jones | 1582 | 17.28 |
| Nestor Quecuty | 935 | 10.21 |
| Eugenio Vargas | 3148 | 34.38 |
| Total | 9156 | |

- There were 20656 eligible voters, of which 9355 cast a ballot, representing 45.3% of the eligible voters.
- Of the 9355 ballots cast, 5433 (58.1%) were by phone, and 3922 (41.9%) were by web.
- There were 0 ballots cast in which the voter did not make a selection.

These Official Results witnessed and certified by Nena Martin, Marcy Dunaway, Kimberly Goesling, Sam Morales, Michael Truan, Liz Geiss, Marie Plevritis, Lena Gale, Cindy Horan, Leatha Harding-Berry and Avis Rives.

| | |
|---|---|
| Nena Martin<br>witness | signature / date |
| Marcy Dunaway<br>witness | signature / date |
| Kimberly Goesling<br>witness | signature / date   9 Ja—16 |
| Sam Morales<br>witness   1/19/16 | signature / date |
| Michael Truan<br>witness | signature / date   1/9/16 |
| Liz Geiss<br>witness | signature / date   1/9/16 |

EXHIBIT akm
Horan H
7/27/17

·BP - APFA Voting System                                              Page 2 of 2

| | | | |
|---|---|---|---|
| Marie Plevritis  *Am Plevris*  witness | *Am Plevris* | 1/9/16 |
| | | signature / date | |
| Lena Galle  *ROT H.*  witness | *Ann Roth* | 1/9/16 |
| | | signature / date | |
| Cindy Horan  *Cindy Horan*  witness | *Cindy Horan* | 1/9/16 |
| | | signature / date | |
| Leatha Harding-Berry  *L Harding Berry*  witness | *L Harding Berry* | 1/9/16 |
| | | signature / date | |
| Avis Rives  witness | *Avis Rives* | 1/9/16 |
| | | signature / date | |

Report generated: 01/09/2016 10:09:07 (Central)

Copyright © 2000-2016 CCComplete, Inc. All Rights Reserved.
**BallotPoint** ☑
  Election Services

January 22, 2015

In accordance with Article VI, Section 6 of the APFA Constitution and Bylaws. I, Samuel Morales, a member in good standing, am officially filing an Election Contest/Protest to the secretary of APFA, Mr. Jeff Pharr, to be forwarded to the National Balloting Committee, Cindy Horan, to overturn my National Vice President Election, canvassed on January 09, 2016 at APFA Unity Headquarters, and I call for a new election to be run under the observation and direction of the Department of Labor (DOL), and in accordance with provisions outlined in section 401(e) of the LMDRA, See 29 C.F.R. Subsection 452.97.

The Association of Professional Flight Attendants, herein after referred to as the "APFA," utilized an Internet and telephone voting system which is designed by a 3rd party company, called Ballot Point, which is located in a different state, where as each member is required to enter an employee identification number (VIN) and a (PIN) number, which could be monitored by certain employees of the third-party Company, which is cast by telephone and whereas votes during this election process can no longer be changed as in previous elections. APFA arbitrarily made changes to electronic voting without providing an explanation as to why changes were made.

**Moreover, no record of undelivered/returned ballot envelopes was published or provided for any of the observers who observed at APFA Headquarters. Where did the returned ballots go and who receives them when they're returned undelivered? What safeguards and/or protections members we have if the so-called "Official Tallies" arrive in one room at APFA (a room off limits to ballot count observers) and are forwarded to the main Unity Pays room where the observers are and the tally is counted. This procedure is both unsterile and unsecure.**

Section 401(c) of the LMRDA requires that "adequate safeguards to take place in order to insure that a fair election be provided, which includes the right of any candidate to have an observer at each of polls and at the counting of the ballots." Since APFA is in one state and Ballot Point is in another, its is practically impossible for me (or any observer) to view the balloting process, which I believe violates LMDRA 29 U.S.C. 481(c).

The Department of Labor's (DOL) regulations at 29 CFR 452.107(a) state that under the provisions of section 401(c), each candidate must be permitted to have an observer (1) at the polls and (2) at the counting of the ballots. That right also encompasses every phase and every level of the counting and tallying process, including the counting and tallying of the ballots and the totaling, recording, and reporting of the tally sheets. Furthermore, if there is more than one polling place, the candidate may have an observer at each location. If ballots are being counted at more than one location or at more than one table at a single location, a candidate is entitled to as many observers as necessary to observe the actual counting of the ballots. The observer may note the names of those voting so that the candidates may be able to ascertain whether unauthorized persons voted in the



election. The observers should be placed so that they do not compromise, or give the appearance of compromising, the secrecy of the ballot.

On January 09, 2016, the day I observed my balloting race for APFA National Vice President there was nothing to view or challenge. No eligible membership voters list was provided, however APFA provided the names of those who became dues current within the required statutory voting deadline, a new change never provided before and was sent via email, but not the entire eligible list .

During this National election, the final tallies came to a laptop in the Unity Pays room and not a fax machine. There is no way to verify if the results came directly from Ballotpoint, which is in another State, or if the Tallies came from a different room within APFA. Ballotpoint has stated that it does not certify our elections, only APFA does, which means there's absolutely no way to verify any of the results because it's all done in secret. Unlike previous paper ballots that were certified by an outside accounting firm, electronic ballots are certified by the APFA alone with no second verification as to the authenticity.

Furthermore the DOL's regulations at 29 CFR 452.107(c) states that "In any secret ballot election which is conducted by mail, regardless of whether the ballots are returned by members to the labor organization office, to a mail box, or to an independent agency such as a firm of certified public accountants, candidates must be permitted to have an observer present at the preparation and mailing of the ballots, their receipt by the counting agency and at the opening and counting of the ballots."

Moreover, the DOL's regulations at 29 CFR 452.110(a) states, in part, that "the Act contains a general mandate in Section 401(c), that adequately safeguards to insure a fair election be provided. ... A labor organization's wide range of discretion regarding the conduct of elections is thus circumscribed by a general rule of fairness."

Also with regard to Preservation of Records Section 401(e) of the LMRDA which provides that "[t]he election officials designated in the constitution and bylaws or the secretary, if no other official is designated, shall preserve for one year the ballots and all other records pertaining to the election." 29 U.S.C. 481(e). I was handed a piece of paper(s) with regard to my election, which only stated the names of the candidates (3) and the final numbers, with absolutely no certification whatsoever from Ballotpoint.

It is for the above aforementioned, I am calling for the NBC to overturn the National Vice President election, and I also demand that a new election balloting process begin which utilizes a paper ballot with a neutral third-party balloting company to count the ballots. I demand that APFA use a balloting process that can be authenticated and verified.