CTO

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

SEP 15 2017

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THOMAS E. PEREZ [now R. ALEXANDER
ACOSTA], Secretary of Labor,

     Plaintiff,

v.

ASSOCIATION OF PROFESSIONAL
FLIGHT ATTENDANTS,

     Defendant.

Civil Action No. 4:16-cv-1057-A

## BRIEF IN SUPPORT OF DEFENDANT APFA'S
## RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ANDREW D. ROTH*
D.C. Bar No. 414038
ROBERT ALEXANDER*
D.C. Bar No. 465673
ADAM BELLOTTI*
D.C. Bar No. 1020169
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St. N.W., Tenth Floor
Washington, D.C. 20005
Tel: (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
Email: ralexander@bredhoff.com
Email: abellotti@bredhoff.com

*Admitted Pro Hac Vice

SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, TX 75214
Tel: (214) 637-0750
Fax: (214) 637-0730
Email: denison@baabdenison.com

Attorneys for Defendant Association
of Professional Flight Attendants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

ARGUMENT .................................................................................................... 1

I.   THE DOL'S FIRST GROUND FOR SUMMARY JUDGMENT IS BASELESS ............ 1

  A.   The DOL's Effort To Nullify The Results Of APFA's Election
       Based On Two Different Alleged Ballot-Secrecy Violations
       Fails As A Matter Of Law, Because No Rational Trier Of Fact
       Could Find On This Record That Those Alleged Ballot-Secrecy
       Violations "May Have Affected" The Election's Outcome ................................... 1

  B.   In Any Event, The DOL Is Not Entitled To Summary Judgment
       In Its Favor On The Separate Ballot-Secrecy-Violations Issue .............................. 7

II.  THE DOL'S SECOND GROUND FOR SUMMARY JUDGMENT IS BASELESS ...... 12

  A.   The DOL's Effort To Nullify The Results Of APFA's Election
       Based On An Alleged § 401(c) Violation Fails As A Matter Of Law,
       Because No Rational Trier Of Fact Could Find On This Record That
       § 401(c) Was Violated In The Manner Claimed In The Secretary's
       Complaint ............................................................................................. 12

  B.   In Any Event, The DOL Is Not Entitled To Summary
       Judgment In Its Favor On The Separate
       May-Have-Affected-The-Outcome Issue ........................................................ 16

CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Brennan v. Local 3489, United Steelworkers of Am.*, 520 F.2d 516 (7th Cir. 1975)................ 9, 10

*Donovan v. CSEA Local 1000, AFSCME*, 594 F. Supp. 188 (N.D.N.Y. 1984) ...................... 6, 10

*Hodgson v. United Mine Workers of Am.*, 344 F. Supp. 17 (D.D.C. 1972)................................... 10

*Kelly v. Local No. B-183*, 566 F. Supp. 1199 (S.D.N.Y. 1983)...................................................... 10

*Marshall v. Local Union 12447, United Steelworkers of Am.*,
    591 F.2d 199 (3d Cir. 1978) ............................................................................................ 8, 9, 10

*Reich v. United Mine Workers of Am.*, No. 94-1691,
    1995 WL 791950 (D.D.C. Oct. 24, 1995) ................................................................................ 10

*Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492 (1968).............. 3, 4, 6, 16

## STATUTES

29 U.S.C. § 481(a) ................................................................................................................................ 1

29 U.S.C. § 481(c) ........................................................................................................... 12, 13, 14, 15

29 U.S.C. § 482(c)(2)........................................................................................................................... 1

## ARGUMENT

The Plaintiff Secretary of the United States Department of Labor ("DOL") has moved for a summary judgment nullifying the results of the Defendant Association of Professional Flight Attendant's ("APFA") most recent national officer's election on two separate grounds. The first ground is that APFA committed "two different" violations of § 401(a) of the Labor Management Reporting and Disclosure Act ("LMRDA")—*i.e.*, two different "ballot-secrecy" violations— each of which "may have affected the outcome" of APFA's election. *See* Brief in Support of Plaintiff's Motion for Summary Judgment ("DOL Br.") at 18-28, 34-43. And, the second ground is that APFA violated § 401(c) of the LMRDA, also in a way that "may have affected the outcome" of APFA's election. *See id.* at 28-34, 43-45. *See also id.* at 17 (conceding that "[f]or the Court to nullify the results" of APFA's election, the Court must find *both* "that a statutory violation occurred during the union's election," *and* "that the violation 'may have affected the outcome' of the election") (citing 29 U.S.C. § 482(c)(2)).

As shown below, the DOL is not entitled to the summary judgment it seeks on any ground. Rather, for the reasons previously set out in APFA's summary judgment papers, and elaborated on below, it is APFA that is entitled to summary judgment in this case.

## I.    THE DOL'S FIRST GROUND FOR SUMMARY JUDGMENT IS BASELESS

A.    The DOL's Effort To Nullify The Results Of APFA's Election Based On Two Different Alleged Ballot-Secrecy Violations Fails As A Matter Of Law, Because No Rational Trier Of Fact Could Find On This Record That Those Alleged Ballot-Secrecy Violations "May Have Affected" The Election's Outcome

On their face, both of the two different ballot-secrecy violations alleged by the DOL rest on the same theory of liability: *to wit*, that the BallotPoint electronic voting system collects and stores certain data on two separate computer servers (the "ES" and the "MRNS") in such a way that it would have been possible for persons with access to both servers to use that data to

connect APFA voters with their votes. *See* DOL Br. at 13, 18-20, 22-23 (describing and
discussing a method through which it purportedly would have been possible for persons with
access to both the ES and the MRNS to use certain data on those servers to link 100% of APFA
voters with their votes); *id.* at 13-16, 20 (describing and discussing a different method through
which it indisputably would have been possible for persons with access to both the ES and the
MRNS to use other data on those servers to link 43% of APFA voters with their votes).

But even assuming *arguendo* (and contrary to the showing *infra* pp. 7-11) that the DOL's
theory of liability has sufficient merit to warrant summary judgment in the DOL's favor on the
ballot-secrecy-violations issue, the DOL's effort to nullify the results of APFA's election on this
first ground fails as a matter of law. That is so because no rational trier of fact could find on this
record that either of the two alleged ballot-secrecy violations "may have affected the outcome"
of APFA's election.

APFA's affirmative case on this dispositive issue is set out in detail at pages 4-10 of
APFA's Brief in Support of its Motion for Summary Judgment ("APFA Br."), and APFA will
not burden the Court with a second, full recitation of that case here. To summarize, APFA's case
rests principally on the sworn deposition testimony of Stephen J. Willertz, head of the DOL
office that investigated the conduct of the challenged APFA election, that based on what that
DOL investigation revealed, there is "just no way" that APFA members could have made "any
sort of assessment as to whether or not votes and voters could be connected" under the
BallotPoint system. *See* App. at 12-14 (Willertz Dep. at 40-42); *see also id.* at 59-60 (Willertz
Dep. at 224-25) (under the BallotPoint system, "[t]here is no way for [voters] to know exactly

what was behind the scenes or in the black box").[1] Given this Willertz deposition testimony, it follows that there is "just no way" that the two asserted BallotPoint system flaws allowing for such a connection to be made could have impacted the voting behavior of APFA members and thereby affected the outcome of APFA's election. *See* APFA Br. at 6-9.

The DOL makes two arguments aimed at overcoming this straightforward, common-sense conclusion, but neither argument has any merit.

      1.    The DOL observes, and APFA readily acknowledged in its summary judgment brief, that proof of an LMRDA violation creates a presumption that the election's outcome has been affected, thereby putting the onus on the defendant union to rebut that presumption (if it can) through "tangible evidence against the reasonable possibility that the [violation] did affect the outcome." *See Wirtz v. Hotel, Motel & Club Employees Union, Local 6*, 391 U.S. 492, 508 (1968) ("*Wirtz v. Hotel Employees*"). But according to the DOL,

> the APFA has already confirmed [in discovery] that it has no such evidence. Specifically, in response to an interrogatory that asked for the factual basis for the APFA's denial that the outcome of the election may have been affected by the ballot-secrecy violations, the APFA pointed to no affirmative evidence tending to negate any possible effect on the election. . . . The APFA instead relied entirely on testimony or statements from OLMS personnel (or the union member who filed the underlying complaint with OLMS), which statements the APFA argues show that the Secretary does not have any evidence that APFA members knew of, or were concerned about, the ballot-secrecy issues in the election. . . . That kind of "no evidence" argument does not suffice, though, given that the APFA bears the evidentiary burden.

*See* DOL Br. at 41-42 (citations and footnote omitted).

This is an inaccurate description of APFA's interrogatory responses. To be sure, for the sake of completeness, APFA referred in those responses to the DOL's lack of evidence that

---

[1] References to "App." in this brief are to the appendix of evidentiary materials previously submitted by APFA in support of its motion for summary judgment. APFA has submitted a separate appendix of evidentiary materials in support of this response to the DOL's motion for summary judgment, which is referred to herein as "App.-2."

individual APFA members, including the complainant Samuel Morales, had actual knowledge of the facts surrounding the alleged ballot-secrecy violations in this case. *See* App. at 88-89 (APFA Interrog. Resp. ¶¶ 1-4). But in those responses, APFA *also* cited Mr. Willertz's deposition testimony that, based on what the DOL's investigation into APFA's election revealed, "[t]here is just no way" that APFA members could have known of those facts, *i.e.*, "just no way" that APFA members could have made "any sort of assessment as to whether or not votes and voters could be connected" under the BallotPoint system. *See* App. at 89 (APFA Interrog. Resp. ¶ 5) (citing Willertz Dep. at 41-42); *see also* App. at 89 (APFA Interrog. Resp. ¶ 6) (citing other Willertz deposition testimony to the same effect). The DOL's assertion to the contrary notwithstanding, this Willertz deposition testimony—a candid concession of the DOL official who led the investigation into APFA's election—indisputably constitutes "affirmative evidence tending to negate any possible effect on the election" flowing from the alleged ballot-secrecy violations. *See* APFA Br. at 6-9 (explaining in detail why that is so).

Importantly in this regard, the Supreme Court in *Wirtz v. Hotel Employees* drew a critical dividing line between "tangible evidence" negating the reasonable possibility that an LMRDA violation has affected the outcome of a union election ("tangible evidence" that justifies the denial of relief for the violation), and "pure conjecture" aimed at negating that reasonable possibility ("pure conjecture" that does not justify the denial of relief for the violation). *See* 391 U.S. at 508. Mr. Willertz's candid concession that "[t]here is just no way" that APFA members could have made "any sort of assessment as to whether or not votes and voters could be connected" under the BallotPoint system plainly falls on the "tangible evidence" side of this dividing line. That is so because Mr. Willertz's concession rests *not* on "conjecture" of any kind, but on concrete evidence revealed by the DOL's investigation into APFA's election that the

BallotPoint system is not accessible for observation or inspection by APFA members or their agents, and is "complicated" and "highly technical" in its design. *See* APFA Br. at 8 (citing App. at 12-14, 61-62).[2]

2. Second, the DOL relies on a line of cases standing for the proposition that "[w]hen LMRDA violations have tainted some portion of the votes or potential votes in a union election, . . . the proper analysis under the liberal 'may have affected the outcome' standard is to assume that all the *potentially affected votes* would have been cast against the winning candidate," and to invalidate the election "if the margin of victory is less than the number of these [*potentially*] *affected votes*." *See* DOL Br. at 36 (emphasis added).

The DOL is correct that there is a line of cases standing for the foregoing proposition. But the DOL's reliance on this line of cases is misplaced in light of the Willertz concession—a concession which readily distinguishes the instant case from each of the cases within this line.

The distinguishing feature of each of the cases relied on by the DOL by way of "example," *see* DOL Br. at 36-39, was the absence of "tangible evidence" negating the reasonable possibility that the LMRDA violation in question potentially affected a sufficient number of votes to change the election's outcome. But here, there most certainly *is* "tangible evidence" (the Willertz concession) negating the reasonable possibility that the ballot-secrecy violations alleged by the DOL potentially affected a sufficient number of votes to change the APFA election's outcome. Contrary to the DOL's assertion that under either of the alleged ballot-secrecy-violation "scenarios" it posits "the number of potentially affected votes was well

---

[2] The DOL's own summary judgment brief reinforces these evidentiary points underlying the Willertz concession. *See* DOL Br. at 7 ("*Behind the scenes*, BallotPoint used several computers and related interconnected devices to perform the voting process and to record and count votes in the APFA's election.") (emphasis added); *id.* at 8-10 (discussion showing how complicated and highly technical the BallotPoint system truly is).

in excess of the winning margins of victory in the four races in the APFA's election," DOL Br. at 39-40, the Willertz concession firmly establishes that "the number of potentially affected votes" was, in fact, *zero*. That is so because, as APFA has shown, a union member's vote cannot potentially be affected by ballot-secrecy violations that the member had "just no way" of knowing about.

The DOL's misplaced reliance on this line of cases is best illustrated by comparing the undisputed facts here to the undisputed facts in one of the DOL's relied-on cases, *Donovan v. CSEA Local 1000, AFSCME*, 594 F. Supp. 188 (N.D.N.Y. 1984), *aff'd in part, rev'd in part on other grounds*, 761 F.2d 870 (2d Cir. 1985) ("*CSEA*").

The *CSEA* case, like the instant case, involved an alleged ballot-secrecy violation, but that is where the similarity between the two cases ends for present purposes. In the *CSEA* case, the defendant union conducted its election by mail ballot, and the court found a ballot-secrecy violation based on the fact that union members were supplied with and required to use perforated ballot forms that, *on their face,* contained sufficient information to link voters with their votes absent a proper detachment of the top and bottom portions of the forms by the ballot counters. *See* 594 F. Supp. at 195. In those circumstances, *the prospect that voters could be linked with their votes was patently obvious to all union members required to use a perforated ballot form.* The court thus concluded—quite rightly under the Supreme Court's decision in *Wirtz v. Hotel Employees*—that it could not rule out the reasonable possibility that members had changed their planned voting behavior in sufficient numbers to affect the election's outcome out of understandable fear that voter anonymity could be compromised through the improper handling of the perforated ballot forms. *See id.* at 197-98.

Here, in marked contrast, APFA conducted its election using an internet-based electronic voting system under which APFA members *had "just no way" of knowing of the prospect that voter anonymity could be compromised "behind the scenes" through the matching up of data contained on BallotPoint's two separate computer servers.* In these far different circumstances, this Court can definitively rule out the reasonable possibility that APFA members changed their planned voting behavior in sufficient numbers to affect the election's outcome (indeed, in any numbers at all) out of fear that voter anonymity could be compromised through the improper handling of data contained on BallotPoint's two computer servers.

*          *          *          *

In short, APFA, rather than the DOL, is entitled to summary judgment on the issue of whether the ballot-secrecy violations alleged in this case "may have affected the outcome" of APFA's election. In other words, the DOL's effort to nullify the results of APFA's election based on allegations of two different ballot-secrecy violations fails as a matter of law, wholly without regard to the legal sufficiency of those allegations.

**B.     In Any Event, The DOL Is Not Entitled To Summary Judgment In Its Favor On The Separate Ballot-Secrecy-Violations Issue**

Given the foregoing, it is unnecessary for this Court to consider the DOL's claim that it is entitled to summary judgment on the separate issue of whether two different ballot-secrecy violations occurred here. *See* DOL Br. at 18-28. That claim, however, is meritless.

For the reasons set out in the accompanying footnote, the DOL's allegation that ballot secrecy was violated "by the use of one-time passwords that linked voters to votes," DOL Br. at

18, lacks sufficient *factual* support in the record to warrant summary judgment in the DOL's favor on this allegation.[3]

The larger point to be made here, however, is that the DOL's claimed entitlement to summary judgment on *both* of its ballot-secrecy-violation allegations rests on a manifestly incorrect *legal* premise that should be categorically rejected by this Court: *to wit*, that the LMRDA's ballot-secrecy requirement is violated merely by a showing that under the voting method used by the union, "it is possible to link voters to their choices." *See* DOL Br. at 18.

The DOL's sole asserted support for this legal premise is the Third Circuit's decision in *Marshall v. Local Union 12447, United Steelworkers of Am.*, 591 F.2d 199 (3d Cir. 1978) ("*Local 12447*"). *See* DOL Br. at 18. But the DOL wholly ignores the actual holding of this Third Circuit decision, and seizes instead on a single sentence in a single footnote of the court's opinion taken entirely out of context.

---

[3] The one-time password is a randomly generated session tag or "token" associated with each voting session. App.-2 at 2-3 (Feldkamp Decl. ¶ 4). The MRNS associates that one-time password with a voter profile in order to avoid both duplicative voting and the inadvertent disenfranchisement of voters, *id.* at 3-4 (Feldkamp Decl. ¶¶ 5-7), but by conscious design the one-time password data on the MRNS is maintained only in the MRNS's random-access memory or "RAM," *id.* at 3 (Feldkamp Decl. ¶ 5). Because the one-time password data on the MRNS is maintained only in RAM, it is rendered inaccessible at the end of the voting session and is subject to being overwritten thereafter as the MRNS needs to reuse that memory to accomplish its various other tasks. *Id.* BallotPoint's chief system engineer, Gerry Feldkamp, knows of no existing method for writing a program—and the DOL itself identifies none—that would allow someone to retrieve the one-time password data during whatever period of time it may be maintained on the MRNS in RAM after that data has been used by the BallotPoint system to accomplish the tasks for which it is intended. *Id.* at 4-5 (Feldkamp Decl. ¶ 8). There is thus no record evidence supporting the DOL's claim that it would be possible for someone with access to both the MRNS and the ES to use the one-time password to identify voter names on the MRNS and then match those voter names with the content of votes stored and associated with a one-time password on the ES. Notably in this regard, the DOL designated an expert in computer science in this case, *see* Dkt. No. 25, but that expert's report, which is conspicuously absent from the DOL's evidentiary submission in support of summary judgment, makes no mention of any ballot-secrecy problem associated with the BallotPoint system's use of one-time passwords.

The actual holding of *Local 12447* is that a union is required by the LMRDA "to take all reasonable steps to assure that every voter marks his ballot in secret." *See* 591 F.2d at 204. Under that holding, the LMRDA's ballot-secrecy requirement is *not* violated (as the DOL asserts) merely by a showing that under the voting method used by the union, "it is possible to link voters to their choices." Rather, what is required to establish a violation is a showing that in implementing its chosen voting method, the union failed to take "all reasonable steps" to guard against this possibility.

In advocating in favor of a broader reading of *Local 12447*, the DOL seizes on the following sentence in footnote 10 of the court's opinion: "The evidence showed only that, because of the way the election was conducted, it was *possible* to observe how some voters had marked their ballots." *See* DOL Br. at 18 (quoting 591 F.2d at 203 n.10 (emphasis by court)). But the DOL omits any reference to the very next sentence in footnote 10, which reads: "This, we believe, was sufficient to show a violation of the Act *where reasonable steps have not been taken to require members to vote in secrecy*." *See* 591 F.2d at 203 n.10 (emphasis added). This omitted sentence confirms the point that under *Local 12447*'s holding, the touchstone of a ballot-secrecy violation is not whether "it is possible to link voters to their choices," but whether the union has failed to take "all reasonable steps" to guard against this possibility.[4]

_____

[4] The DOL also misses the mark in placing undue emphasis on the word "cannot" in the LMRDA definition of "secret ballot." *See* DOL Br. at 18 (quoting that portion of the LMRDA definition stating that a "secret ballot" is one "cast in such a manner that the person expressing [the voting] choice *cannot* be identified with the choice expressed) (brackets and emphasis by DOL). As the case law holds, the function of the word "cannot" in the LMRDA definition is to make it clear that "[t]he Act requires a mandatory secret ballot, not one [merely] permitting a voter to mark his ballot in secret with the danger of identification implicit in securing that secrecy." *Brennan v. Local 3489, United Steelworkers of Am.*, 520 F.2d 516, 522 (7th Cir. 1975), *aff'd*, 429 U.S. 305 (1977) ("*Local 3489*"); *accord Local 12447*, 591 F.2d at 204.

Depending on the voting method chosen by the union, it can be very easy for a court to determine whether the union has fulfilled its statutory duty to take "all reasonable steps" to guard against the possibility that voters can be linked to their votes. In the *Local 12447* case, for example, the Third Circuit had little trouble concluding that the union breached its statutory duty by failing to instruct members that they "*must*" use the cardboard boxes supplied by the union to shield their votes, and by failing to limit the number of voters admitted to the balloting area to coincide with the number of cardboard boxes available—steps "which were neither expensive nor difficult to implement." 591 F.2d at 205 (emphasis by court); *see also Hodgson v. United Mine Workers of Am.*, 344 F. Supp. 17, 30 (D.D.C. 1972) (invalidating union election where the union used ridiculously "loose polling procedures" far less effective in ensuring ballot secrecy than the polling procedures found to be unreasonable in the *Local 12447* case); *Local 3489*, *supra*, 520 F.2d 516 (same).[5]

The judicial determination of reasonableness is inherently more complex and difficult in the internet-based electronic voting system context, especially where, as here, the DOL's ballot-secrecy-violation allegations rest on the highly-technical theory that the particular electronic voting system used in the election collects and stores certain data on two separate computer servers in such a way that it is possible for persons with access to both servers to use that data to link voters with their votes. Because there is no judicial precedent on point, *see* APFA Br. at 5 & n.4, it is unclear what factors a court might properly consider in making such a reasonableness

---

[5] The determination that the union had violated its statutory duty was equally easy in the three "paper voting system[ ]" cases relied on by the DOL in which the paper ballots were either marked or designed in such a way as to permit the linkage of voters and their votes. *See* DOL Br. at 20-22 (citing *Kelly v. Local No. B-183*, 566 F. Supp. 1199 (S.D.N.Y. 1983); *Reich v. United Mine Workers of Am.*, No. 94-1691, 1995 WL 791950 (D.D.C. Oct. 24, 1995); and *CSEA*, *supra*, 594 F. Supp. 188). In the *Reich* and *CSEA* cases, the union offered no justification at all for the particular voting method used, and in the *Kelly* case, the union's proffered justification was found by the court to be pretextual, *see* 566 F. Supp. at 1201 n.3.

determination. But logic dictates that such factors should include, without limitation: (i) to what extent, if any, the collection and storage of the data making it possible to link voters with their votes is necessary (or helpful) to the proper and efficient functioning of the electronic voting system[6]; (ii) whether there are effective technological means of avoiding or mitigating any asserted ballot-secrecy problems arising from the collection and storage of such data[7]; and (iii) whether the union has hired a reputable third-party vendor to run the election that can be relied on to use any data necessary (or helpful) to the proper and efficient functioning of the system for its intended purpose, rather than for the improper purpose of linking voters with their votes.[8]

Unsurprisingly given its legally incorrect premise that the mere possibility that voters can be linked with their votes, rather than the reasonableness of the union's actions, is "[t]he key inquiry" here, *see* DOL Br. at 18, the DOL presents *no* evidence and makes *no* argument in support of a judicial finding of unreasonableness. For this reason alone, the DOL's claim that it is entitled to summary judgment in its favor on the ballot-secrecy-violations issue is meritless.

---

[6] APFA has submitted evidence showing that the one-time password data purportedly allowing for the linkage of 100% of APFA voters with their votes, *but see supra* p. 8 n.3, is what enables the BallotPoint system to prevent both duplicative voting and the inadvertent disenfranchisement of voters. App.-2 at 3-4 (Feldkamp Decl. ¶¶ 6-7). Similarly, the IP address and timestamp data collected by BallotPoint in APFA's election and used by the DOL to link 43% of APFA voters with their votes enabled BallotPoint to provide support to voters during the election, increasing voter access to and confidence in the system and allowing BallotPoint to address voter complaints about the system. *Id.* at 5-7 (Feldkamp Decl. ¶¶ 9-11).

[7] The DOL claims that there are effective means of avoiding the asserted ballot-secrecy problem arising from the use of one-time passwords, *see* DOL Br. at 19 n.15, but cites nothing in the summary judgment record to back up this claim, and there is nothing.

[8] APFA has submitted evidence showing that BallotPoint has been engaged by two federal agencies (the National Mediation Board and the Federal Labor Relations Authority) for many years to conduct union representation elections on behalf of those agencies, and more recently has been engaged by the United States Department of the Treasury to conduct pensioner benefit-reduction referenda on behalf of that agency. App.-2 at 7-8 (Feldkamp Decl. ¶ 13). None of these federal agencies has ever raised concerns or questions about the BallotPoint voting system's security, secrecy, reliability, accessibility or integrity. *Id.*

- 11 -

II.    THE DOL'S SECOND GROUND FOR SUMMARY JUDGMENT IS BASELESS

    A.    The DOL's Effort To Nullify The Results Of APFA's Election Based
          On An Alleged § 401(c) Violation Fails As A Matter Of Law,
          Because No Rational Trier Of Fact Could Find On This Record That
          § 401(c) Was Violated In The Manner Claimed In The Secretary's Complaint

The DOL's § 401(c) violation claim has a superficial logic to it. Under that statutory

provision, "candidates in union elections must be permitted to 'have an observer at the polls and

at the counting of the ballots.'" *See* DOL Br. at 4 (partially quoting § 401(c)'s operative

sentence). It is undisputed that the internet-based electronic voting system used in APFA's

election "**did not permit candidates to have an observer at the polls and at the counting of**

**the ballots**." *See id.* at 28 (section title; bolding in original); *see also id.* at 29-30, 34 (belaboring

this undisputed fact). Thus, according to the DOL, APFA "violated" § 401(c). *See id.* at 1.

However, in pressing this § 401(c) violation claim, the DOL in its summary judgment

brief had to, and did, simply ignore the additional legal considerations and undisputed facts

detailed in APFA's summary judgment brief. When given the recognition they are due, those

additional legal considerations and undisputed facts ignored by the DOL show that the DOL's

§ 401(c) violation claim is unsound and should be rejected. To reiterate, those additional legal

considerations and undisputed facts are as follows:

- Insofar as is relevant here, § 401(c) has *two* facets to it. The first is "a general

  mandate" that in conducting their officer elections, unions shall provide

  "[a]dequate safeguards to insure a fair election." And, the second is the specific

  "observer requirement," DOL Br. at 1, that forms the basis of the DOL's

  § 401(c) violation claim. *See* APFA Br. at 10 & 12.

- In a union election conducted, as here, using an internet-based electronic voting system, it is literally impossible for a union to comply with § 401(c)'s specific observer requirement. *See* APFA Br. at 10-11 & n.6.

- Given the impossibility of compliance with § 401(c)'s specific observer requirement, APFA and BallotPoint adopted and implemented a wide range of *alternative* safeguards in connection with the conduct of the challenged APFA election, including a set of alternative observer safeguards and a set of alternative technology-based safeguards. *See* APFA Br. at 11.

- As the DOL itself concedes, App. at 51 (Willertz Dep. at 200), the Complaint in this case does *not* allege a violation by APFA of § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided. Nor did the DOL make a finding of such a § 401(c) violation in its investigation into APFA's election. App. at 50-51 (Willertz Dep. at 199-200). Thus, for present purposes, it must be taken as undisputed that the alternative safeguards implemented by APFA in the challenged election were sufficient to satisfy § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided. *See* APFA Br. at 11-12.

As shown in detail in APFA's summary judgment brief, a union does *not* violate § 401(c) where, *as is undisputed here*, the union compensates for its inability to comply with § 401(c)'s specific observer requirement by adopting and implementing alternative safeguards sufficient to satisfy § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided. *See* APFA Br. at 12-21. The competing interpretation of § 401(c) urged on this Court by the DOL would read into § 401(c) a flat prohibition on a union's use of any voting procedure

(*e.g.*, mail ballot voting and internet-based electronic voting) in which it is impossible for the union to comply with § 401(c)'s specific observer requirement but possible for the union to achieve the very same fairness purpose served by that requirement, *see* DOL Br. at 3-5, through alternative means.  That is a result which Congress could not have intended, and that the DOL itself has rejected in its out-of-court pronouncements permitting the use of mail ballot voting and internet-based electronic voting procedures contingent on the union's adoption and implementation of alternative safeguards deemed adequate by the DOL to insure a fair election. *See* APFA Br. at 12-21.[9]

The DOL's summary judgment brief does nothing to contravene this showing in APFA's summary judgment brief.  To the contrary, the DOL's brief further undermines the DOL's competing interpretation of § 401(c) through its discussion of situations in which electronic voting machines might be used to conduct a union election.

In that discussion, the DOL acknowledges, as it must, that it would be impossible for a union to comply with § 401(c)'s specific observer requirement in an election conducted using electronic voting machines, inasmuch as "[h]uman beings cannot physically be placed inside the internal mechanisms of machines" to observe whether votes are being recorded and counted correctly.  *See* DOL Br. at 32.  But the DOL goes on to make clear its view that this impossibility of compliance with § 401(c)'s specific observer requirement does *not* render the use of electronic

---

[9] Contrary to the DOL's assertion, *see* DOL Br. at 33, it is not APFA's "implicit" or "explicit" position that it is impossible for a union to provide for effective observer rights of any kind in the mail ballot voting and internet-based electronic voting contexts (*i.e.*, those contexts where there are not "human beings counting paper ballots at an in-person election," *see id.*).  APFA's position is that it is impossible for a union in the mail ballot voting and internet-based electronic voting contexts to comply with § 401(c)'s specific observer requirement, but possible for the union to achieve the very same fairness purpose served by that requirement through alternative means that may include—as appropriate to the voting context at hand—a combination of alternative observer safeguards and alternative technology-based safeguards.

voting machines unlawful under the LMRDA, provided that the union adopts and implements alternative safeguards that "vindicate the same goals" as that specific observer requirement. *See id.* at 33.[10]

By the same reasoning, the impossibility of compliance with § 401(c)'s specific observer requirement in the internet-based electronic voting system context does *not* render the use of internet-based electronic voting procedures unlawful under the LMRDA, provided that the union adopts and implements alternative safeguards sufficient to satisfy § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided. And, as the DOL itself concedes, its Complaint in this case makes no claim that APFA failed to satisfy § 401(c)'s general mandate that "[a]dequate safeguards to insure a fair election" be provided. *See* App. at 51 (Willertz Dep. at 200).

For the foregoing reasons, and those set out in greater detail in APFA's summary judgment brief, the APFA, and not the DOL, is entitled to summary judgment on the DOL's § 401(c) violation claim. In other words, the DOL's effort to nullify the results of APFA's election on the ground that APFA violated § 401(c)'s specific observer requirement fails as a matter of law, wholly without regard to whether any such hypothetical § 401(c) violation "may have affected the outcome" of the election.

---

[10] Notably in this regard, the DOL touts alternative technology-based safeguards employed by the State of Texas in electronic voting machine elections that are similar to the alternative technology-based safeguards employed by BallotPoint in the challenged APFA election. *Compare* DOL Br. at 33-34 *with* App. at 99-100, 111-14 (Feldkamp Dep. at 17-18 & Exh. 1, pp. 7-10) and *id.* at 127-28, 144-54 (Stapleton Decl. and accompanying expert report).

B.    In Any Event, The DOL Is Not Entitled To Summary Judgment
In Its Favor On The Separate May-Have-Affected-The-Outcome Issue

Given the foregoing, it is unnecessary for this Court to consider the DOL's claim that it is

entitled to summary judgment in its favor on the separate issue of whether any § 401(c) violation

hypothetically occurring here "may have affected the outcome" of APFA's election. *See* DOL

Br. at 43-45. That claim, however, is meritless.

To reiterate, under the Supreme Court's decision in *Wirtz v. Hotel Employees*, if a union

seeks to avoid the nullification of election results based on a § 401 violation, its burden is to

offer "tangible evidence against the reasonable possibility" that the violation affected the

election's outcome. APFA easily has satisfied this burden here with respect to the alleged

violation of § 401(c)'s specific observer requirement.

APFA has designated two expert witnesses in this case, *see* Dkt. No. 26, and both of

those expert witnesses have opined under oath that given the impossibility of compliance with

§ 401(c)'s specific observer requirement, APFA (though its third-party vendor BallotPoint)

adopted and implemented a set of alternative safeguards that were sufficiently effective and

robust to negate "the reasonable possibility" conjured up by the DOL in its summary judgment

brief, *see* DOL Br. at 44-45, that "tampering" or "even mistakes in computing" occurred which

affected the outcome of APFA's election. *See* App. at 99-100, 111-14 (Feldkamp Dep. at 17-18

& Exh. 1, pp. 7-10); *id.* at 127-28, 144-54 (Stapleton Decl. and accompanying expert report).

And, the DOL does not cite *any* evidence in the summary judgment record that even arguably

undermines either expert's opinion.[11]  That being so, the DOL plainly is not entitled to the

summary judgment it seeks on this may-have-affected-the outcome issue.

## CONCLUSION

For the foregoing reasons, the DOL's motion for summary judgment should be denied.


Respectfully submitted,


ANDREW D. ROTH*
D.C. Bar No. 414038
ROBERT ALEXANDER*
D.C. BAR No. 465673
ADAM BELLOTTI*
D.C. Bar No. 1020169
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St. N.W., Tenth Floor
Washington, D.C.  20005
Tel:  (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
Email: ralexander@bredhoff.com
Email: abellotti@bredhoff.com

---

[11] The only item of record evidence cited by the DOL on this issue is the deposition testimony of APFA's retained expert (Curt Stapleton) in which Stapleton admitted that he could not be certain or verify that the vote-counting software program provided to him by BallotPoint as part of his review of the BallotPoint system was the software program actually used by BallotPoint to count the vote in the challenged APFA election.  *See* DOL Br. at 45.  But this admission in no way calls into question Stapleton's conclusion that BallotPoint correctly counted the vote in the election, for two reasons.  First, BallotPoint's chief system engineer, Gerry Feldkamp, has testified that the software program he gave Stapleton for his review was in fact the software program actually used by BallotPoint to count the vote in the challenged APFA election.  App.-2 at 7 (Feldkamp Decl. ¶ 12).  Second, Stapleton's expert report explains, in a passage ignored by the DOL, that he was able independently to confirm the accuracy of the BallotPoint vote count through other means.  App. at 151.  It also is noteworthy that the DOL did its own "spot check" on the vote count and found no irregularities.  App.-2 at 14-15 (Willertz Dep. at 265-66).

SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, TX 75214
Tel: (214) 637-0750
Fax: (214) 637-0730
Email: denison@baabdenison.com

Attorneys for Defendant Association
of Professional Flight Attendants

* Admitted Pro Hac Vice

DATED:  September 15, 2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of September, 2017, the above and foregoing Brief in Support of Defendant APFA's Response to Plaintiff's Motion for Summary Judgment was served on the following Plaintiff's counsel of record electronically by email transmission and by overnight mail, as authorized by Federal Rule of Civil Procedure 5(b):

Brian W. Stoltz
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:      214-659-8626
Facsimile:      214-659-8807
brian.stoltz@usdoj.gov

SANFORD R. DENISON