

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 1 5 2017

CLERK, U.S. DISTRICT COURT,
By
Deputy

THOMAS E. PEREZ [now R. ALEXANDER
ACOSTA], Secretary of Labor,

    Plaintiff,

v.

ASSOCIATION OF PROFESSIONAL
FLIGHT ATTENDANTS,

    Defendant.

Civil Action No. 4:16-cv-1057-A

## APPENDIX OF EVIDENTIARY MATERIALS IN SUPPORT
## OF APFA'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ANDREW D. ROTH*
D.C. Bar No. 414038
ROBERT ALEXANDER*
D.C. Bar No. 465673
ADAM BELLOTTI*
D.C. Bar No. 1020169
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St. N.W., Tenth Floor
Washington, D.C. 20005
Tel: (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
Email: ralexander@bredhoff.com
Email: abellotti@bredhoff.com

SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, TX 75214
Tel: (214) 637-0750
Fax: (214) 637-0730
Email: denison@baabdenison.com

*Admitted Pro Hac Vice

Attorneys for Defendant Association
of Professional Flight Attendants

## TABLE OF CONTENTS

| Document | Tab | Pg. |
|---|---|---|
| Declaration of Gerry Feldkamp in Support of APFA's Response to Plaintiff's Motion for Summary Judgment …………………………………… | A | 1 |
| Deposition of Stephen J. Willertz (Excerpts)…………………………………... | B | 9 |

Respectfully submitted,

ANDREW D. ROTH*
D.C. Bar No. 414038
ROBERT ALEXANDER*
D.C. BAR No. 465673
ADAM BELLOTTI*
D.C. Bar No. 1020169
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St. N.W., Tenth Floor
Washington, D.C.  20005
Tel:  (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
Email: ralexander@bredhoff.com
Email: abellotti@bredhoff.com


SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, TX 75214
Tel: (214) 637-0750
Fax: (214) 637-0730
Email: denison@baabdenison.com

Attorneys for Defendant Association
of Professional Flight Attendants

* Admitted Pro Hac Vice

DATED:  September 15, 2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of September, 2017, the above and

foregoing Appendix of Evidentiary Materials in Support of APFA's Response to

Plaintiff's Motion for Summary Judgment was served on the following Plaintiff's counsel of

record electronically by email transmission and by overnight mail, as authorized by Federal Rule

of Civil Procedure 5(b):

Brian W. Stoltz
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:      214-659-8626
Facsimile:      214-659-8807
brian.stoltz@usdoj.gov

SANFORD R. DENISON

Declaration of Gerry Feldkamp in Support of APFA's
Response To Plaintiff's Motion for Summary Judgment          Tab A; Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

R. ALEXANDER ACOSTA, Secretary of
Labor,

     Plaintiff,

v.

ASSOCIATION OF PROFESSIONAL
FLIGHT ATTENDANTS,

     Defendant.

Civil Action No. 4:16-cv-1057-A

**DECLARATION OF GERRY FELDKAMP IN SUPPORT OF APFA'S
RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I, Gerry Feldkamp, hereby declare as follows:

1.     I am over the age of eighteen and am competent to testify as to all of the facts

contained in this Declaration, of which I have first-hand, personal knowledge.

2.     I am employed by CCComplete, owner of BallotPoint Election Services, as a

software architect.  For approximately 17 years, I have worked on the BallotPoint platform and

have been personally involved in designing and implementing all significant updates and

modifications to the software running the BallotPoint system.  Based on that experience, I have

personal knowledge of how the BallotPoint system is used to conduct elections for

CCComplete's clients, including specifically the Association of Professional Flight Attendants

("APFA").  At the time of the 2016 APFA National Officer election in December 2015 – January

2016, the BallotPoint remote electronic voting system worked in the following manner.

1

3.      The BallotPoint voting system consists of two Microsoft Windows-based computer servers: the Election Server ("ES"), which is where members cast their votes and where votes are stored anonymously in a doubly-encrypted format; and the Member Registration and Notification Server ("MRNS"), which maintains voting rosters uploaded by a client's (for example, APFA's) election administrator and which is where voters log in to cast their votes. Both servers are located in a third-party co-location facility in Portland OR.  The ES and the MRNS communicate during a voting session by sending electronic messages back and forth.

4.      At the outset of a voting session, the ES identifies the entity or organization (for example, APFA, not the individual voter) associated with that voting session based on the web address or telephone number accessed by the voter.  The voter is transferred to the MRNS (immediately, if voting by telephone, or after clicking a "Log In" button if voting by web), where the voter is prompted to enter a unique, 12-digit voting credential that was previously sent by US Mail to that voter.  Every such voting credential is unique to the voter and the election of interest. After the credential is submitted to the MRNS, the MRNS determines whether the credential is valid for that client; if not, the voter is re-prompted for a valid credential.  When a valid credential is entered, the MRNS has identified the individual who is logging in (this is analogous to a voter identifying himself or herself to an election administrator at an on-site, precinct-style election); the type of ballot to present to the voter is determined by the "voting attributes" that were assigned by the election administrator in a voting roster that was uploaded previously to the MRNS.  At this point, the MRNS constructs an electronic message that specifies the client (for example, APFA), the election of interest, and the voting attributes that identify the type of ballot to present to the user.  This message is sent by the MRNS to the ES.  In response to this message, the ES generates a "one-time password," which is the BallotPoint term for a "session token," and

2

sends this value back to the MRNS.   A one-time password is a randomly generated, unique, 9-digit number, and bears no relation to voter-identifying information, such as the voter's employee ID number, member number, or voting credential.  It provides a consistent identification for a particular voting session known to both the ES and MRNS.

5.      The MRNS uses the one-time password to track that particular voting session while it is in progress.  On the MRNS, the one-time password is maintained in an in-memory data structure ("table"), i.e., a table entry for each active voting session is maintained in the MRNS's random-access memory (RAM); by conscious design, it is not written to hard disk or other permanent storage.  Information stored in RAM is not designed to be accessible after a particular use by a computer program; a computer program treats information stored in RAM only as temporary storage for variable data used within the program and not as permanently accessible stored information.  Also, because the MRNS is running the BallotPoint system continuously, the data maintained in its RAM is overwritten on a frequent basis, at which point the overwritten data is obliterated from the system.

6.      Once a voter completes his or her voting session, the ES writes the content of that vote in a "Votes Table" accessible to the ES but not the MRNS.  On average, 30 seconds after a vote is successfully recorded on the ES, the ES sends a message to the MRNS to inform it that the voting session associated with that one-time password has been successfully concluded.  This communication is necessary in order for the MRNS to mark that the voter associated with that credential has successfully voted, preventing that voter from voting again.  Thus, both the ES and MRNS must be aware of the one-time password associated with a voting session for the entirety of that voting session.  The MRNS ends a voting session after it has marked the voter as having voted in its database.  Then, the MRNS effectively deletes the one-time password for that voting

3

session by rendering the in-memory table entry (including the one-time password) inaccessible to the application.

7.     If a voting session terminates prematurely, the ES sends a message specifying the one-time password to the MRNS to reenable that voter to log in again, and the MRNS resets the "accessed" database column associated with that voter credential, so that voter can access the system once again.   As in the usual situation of a vote being successfully cast and recorded, the MRNS ends the voting session and then renders the in-memory table entry associated with that particular one-time password inaccessible to the application.   By enabling the MRNS to reset a voter's database entry and permit the voter to re-access the system, use of the one-time password prevents the disenfranchisement of that voter; if it were not possible to reset the voter's database entry in this manner, the system would prevent that voter from logging in to the system again to cast his or her vote.   This method accounts for those instances where a voting session terminates prior to the vote being cast because the voter chose to leave the voting session or because of an equipment failure (for example, a dropped telephone call or internet connection, which can occur through no fault of the voter).

8.     As described in paragraph 5, information stored in RAM is constantly being overwritten as the MRNS generates new variables that must be stored in this temporary memory. Even before information stored in RAM is overwritten, it is inaccessible unless a program has been written to isolate and identify the desired data.   I know of no existing method for writing programs that could retrieve the temporary, one-time password data that has been maintained in RAM after the particular voting session during which it was put there has concluded.   Even if it were possible to do so, no such program has ever been written to access such data after a voting session has closed, by me or anyone on the BallotPoint staff.   As a result, at the end of a voting

4

session, the link between a one-time password and a particular voter's identifying information has been effectively severed, and it cannot be retrieved or recreated by anybody on the BallotPoint staff.

9.      One of the features of the BallotPoint system during the 2016 APFA National Officer election was the election administrator's ability to initiate a support request.  A support request is a mechanism by which the election administrator, after receiving a request for assistance from a member with some aspect of the BallotPoint system, submits an inquiry about that member's voting status.  Specifically, an APFA election administrator could log in to the BallotPoint system, enter a voter's identification number (for APFA elections, the voter's identification number is his or her employee number), and initiate the support request.  The designed purpose of this facility was to formalize the documentation of any request for assistance by election administrators to BallotPoint staff.  A side-purpose of this feature was to permit anyone investigating an election to see exactly what information was being conveyed from election administrators to BallotPoint staff.

10.      Once a support request was initiated, the system automatically generated and sent an email to the three BallotPoint software engineers, including me.  That email included certain information about the voter's status (taken from the MRNS database entries without making use of the one-time password) within the BallotPoint system.  Specifically, as the system existed at the time of the 2016 APFA National Officer election, the system-generated email indicated:  (1) the particular BallotPoint election to which the support request related; (2) whether the voter was accessing the BallotPoint system at the time of the support request; (3) whether the voter had successfully recorded a vote; (4) a "low-density" timestamp that indicated when the voter voted to within an eight-hour window; and (5) an IP address which indicated the computer address

5

from which the voter accessed the system and voted. (A voter accessing the system via telephone was always logged as having a standard IP address internal to the MRNS, and therefore provides no information regarding the phone number from which the system was accessed.) The email identified the support request only by a unique support request-identifying number, and did not include the employee identification number, voter credential, or other identifying personal information.

11.     Depending on the data disclosed in the support request email, I used that data to recommend a course of action to the election administrator. For example, when the support request email indicated that the voter had accessed the system but did not successfully record a vote, I informed the election administrator that the voter should try to log in to the system again after having been logged out for about thirty minutes (the ES automatically sends a message to the MRNS to reset a voting session after twenty minutes). In this way, the support request function enabled BallotPoint to maximize voter access to the BallotPoint system. Or, if the support request email indicated that the voter had accessed the system and successfully recorded a vote (and there was only one such instance in the 2016 APFA National Officer election), I used the timestamp data associated with the recorded vote to inform the election administrator of the approximate time the voter voted. The election administrator could then use that information to attempt to refresh the voter's memory of whether he or she did, in fact, vote earlier in the election. In other elections, I have used the IP address information contained in the support request email to suggest the metropolitan area from which the vote might have been cast, information that was likewise used by the election administrator to refresh the voter's memory about his or her voting activity. In my 17 years administering the BallotPoint electronic voting system, this procedure has resolved almost every issued raised by voters who reported that the

6

system had erred by reporting that they had voted when (to the voter's mind) they had not yet voted.

12.     In or about June 2017, the APFA's retained expert, Curt Stapleton, conducted a BallotPoint site visit during which he conducted a security assessment of the BallotPoint system. As part of his assessment, Mr. Stapleton requested that BallotPoint provide him with certain information, including the source code modules running on the ES which were responsible for counting and reporting election results.  Mr. Stapleton requested, and I provided to him, the version of the ES application software that had been running on the BallotPoint system during the 2016 APFA National Officer election.  The other source code modules Mr. Stapleton reviewed were also the version of the code running on the BallotPoint system during the 2016 APFA National Officer election.

13.     In addition to conducting internal union officer elections and union referenda, BallotPoint has been exclusively engaged by two federal agencies responsible for running representation elections and exclusively engaged by a third federal agency responsible for running pensioner benefit-reduction referenda.  The National Mediation Board, which has engaged BallotPoint since 2003, conducts representation elections for all railroad and airline-related employee groups covered by the Railway Labor Act.  The Federal Labor Relations Authority, which has engaged BallotPoint since 2010, conducts representation elections for non-postal federal-sector employee groups covered by the Federal Service Labor-Management Relations Statute, including the Transportation Security Administration representation election and subsequent runoff election of 2011.  The Department of the Treasury is charged with conducting pensioner benefit-reduction referenda under the Kline-Miller Multiemployer Pension Reform Act of 2014.  None of the three agencies has ever raised concerns or questions about the

7

BallotPoint system's security, secrecy, reliability, accessibility, or integrity in relation to the election or referendum administered for that entity.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Portland, OR this 11th day of September, 2017.

Gerry Feldkamp

8

Deposition of Stephen J. Willertz (Excerpts)          Tab B; Page 9

# Alderson®

## COURT REPORTING

Transcript of **Stephen J. Willertz**

June 13, 2017

*Perez v. Association of Professional Flight Attendants*

Alderson Reporting
1-800-367-3376
info@aldersonreporting.com
http://www.aldersonreporting.com

Alderson Reference Number: 70651

Stephen J. Willertz                                      June 13, 2017
Washington, D.C.

```
                                                    Page 1
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE NORTHERN DISTRICT OF TEXAS

 3                    FORTH WORTH DIVISION

 4     - - - - - - - - - - - - - - - X

 5     THOMAS E. PEREZ, Secretary of   :

 6     Labor, [now EDWARD HUGLER,       :

 7     Acting Secretary of Labor],      :   Civil Action No.

 8        Plaintiff,                     :   4:16-cv-1057-A

 9             v.                        :

10     ASSOCIATION OF PROFESSIONAL       :

11     FLIGHT ATTENDANTS,                :

12        Defendant.                     :

13     - - - - - - - - - - - - - - - X

14                         Washington, D.C.

15                         Tuesday, June 13, 2017

16              Deposition of STEPHEN J. WILLERTZ, a

17     witness herein, called for examination by counsel for

18     Defendant in the above-entitled matter, pursuant to

19     notice, the witness being duly sworn by MARY GRACE

20     CASTLEBERRY, a Notary Public in and for the District

21     of Columbia, taken at the offices of Bredhoff &

22     Kaiser, 805 15th Street, N.W., Washington, D.C., at
```

Stephen J. Willertz                                          June 13, 2017
                        Washington, D.C.

Page 2

1     9:53 a.m., Tuesday, June 13, 2017, and the

2     proceedings being taken down by Stenotype by MARY

3     GRACE CASTLEBERRY, RPR, and transcribed under her

4     direction.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Stephen J. Willertz                                                    June 13, 2017
                              Washington, D.C.

```
                                                              Page 3

  1   APPEARANCES:

  2

  3        On behalf of the Plaintiff:

  4             BRIAN W. STOLTZ, ESQ.

  5             Assistant United States Attorney

  6             1100 Commerce Street, Third Floor

  7             Dallas, Texas  75242-1699

  8             (214) 659-8626

  9                  and

 10             TAMBRA LEONARD, ESQ.

 11             JENNIFER FREY, ESQ.

 12             CLINTON WOLCOTT, ESQ.

 13             U.S. Department of Labor

 14             200 Constitution Avenue, N.W.

 15             Room N-2474

 16             Washington, D.C.  20210

 17             (202) 693-5744

 18

 19

 20

 21

 22
```

Alderson Court Reporting

Stephen J. Willertz                                            June 13, 2017
Washington, D.C.

```
                                                      Page 4

  1        On behalf of Defendant:

  2              ANDREW D. ROTH, ESQ.

  3              ADAM M. BELLOTTI, ESQ.

  4              Bredhoff & Kaiser

  5              805 15th Street, N.W.

  6              Washington, D.C.  20005

  7              (202) 842-2600

  8

  9    ALSO PRESENT:

 10              KATHERINE ANDREWS, Summer Associate

 11

 12

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22
```

Alderson Court Reporting

Stephen J. Willertz                                              June 13, 2017
                          Washington, D.C.

                                                              Page 265

1          Q.      When you say, "looked back at the case

2      file," what would you be looking for?  I looked at

3      the case file -- at least that was provided to me --

4      and I didn't see any sort of analysis, at least of

5      findings, in respect to the adequacy of the

6      safeguards.  Like any assessment of the function --

7      the vote digest system, the firewalls, or the

8      auditing systems that they used and things like that.

9          A.      Well, I know we didn't find any evidence

10     of hacking or breaches of security.

11         Q.      Finally, did you give any consideration in

12     the course of your investigation -- I know you

13     subpoenaed the MRNS data.

14              Did you give any consideration to

15     subpoenaing the underlying vote data so that you

16     could run some program on that to see if the vote

17     data corresponded to the announced tally?

18         A.      No.  Of course we had the vote strings

19     that was in the vote table, and we could spot check

20     that for results.  So assuming that -- you know,

21     assuming that those vote strings were accurate

22     reflections of the intended votes of the voters, the

Stephen J. Willertz                                                June 13, 2017
Washington, D.C.

Page 266

1   data appeared to mesh with the tally results.

2        Q.    It did through -- and then you determined

3   that through -- you did do a spot check on that?

4        A.    Yeah, we did a spot check.

5        Q.    Can you give me some sense of the scope of

6   that spot check, or whatever --

7        A.    It wasn't particularly extensive.  You

8   know, I think it was a pretty basic system.  You

9   know, you've got Race 1, and then it's either vote --

10   it's either Candidate 1 or 2.

11        Q.    Right.

12        A.    And then Race 2, and then it's either

13   candidate -- each candidate has a candidate.  So, I

14   think, we did, you know, some sort of rough

15   eyeballing of the votes.

16        Q.    So you nothing leapt out at you as

17   irregular in any way?

18        A.    No.

19        Q.    All right.  We're done.

20             MR. ROTH:  Unless you have any questions

21   of your own.

22             MR. STOLTZ:  Well, thank you.  I do.

Stephen J. Willertz                                      June 13, 2017
                        Washington, D.C.

```
                                              Page 268
 1    Notice Date: 06/23/2017

 2    Deposition Date: 06/13/2017

 3    Deponent: Stephen J. Willertz

 4    Case Name: Perez v. Association of Professional

 5    Flight Attendants
      Page: Line              Now Reads              Should Read
 6    _____   _____      _____

 7      Page 42, line 9, "specific" should read "secret"

 8      Page 111, line 19, "district" should be "strict"

 9      Page 191, line 1, "avoided" should be "voided"

        Page 212, line 21, "a fact" should be "affect"
10
        Page 247, line 11, "contacted" should be "contracted"
11
        Page 254, line 11, "a fact" should be "affect"
12    _____   _____      _____

13    _____   _____      _____

14    _____   _____      _____

15    _____   _____      _____

16    _____   _____      _____

17    _____   _____      _____

18    _____   _____      _____

19    _____   _____      _____

20    _____   _____      _____

21    _____   _____      _____

22    _____   _____      _____
```

Alderson Court Reporting

16

Stephen J. Willertz                                                    June 13, 2017
                            Washington, D.C.

Page 269

1                    CERTIFICATE OF DEPONENT

2

3        I hereby certify that I have read and examined the

4        foregoing transcript, and the same is a true and

5        accurate record of the testimony given by me.

6        Any additions or corrections that I feel are

7        necessary, I will attach on a separate sheet of

8        paper to the original transcript.

9        I swear under penalty of perjury that the foregoing is true and correct.

10                              Stephen J. Willertz

11                              Signature of Deponent

12                       Dated: _

13       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
         XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
14       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
         XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
15       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
         XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
16       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
         XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
17       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
         XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
18       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
         XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
19       XXXXXXXXXXXXXXXXXNOTARY PUBLIC IN AND FOR
         XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
20       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
         XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
21       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
         XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
22       XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

Alderson Court Reporting

17