ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THOMAS E. PEREZ [now R. ALEXANDER ACOSTA], Secretary of Labor,<br><br>Plaintiff,<br><br>v.<br><br>ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS,<br><br>Defendant. | Civil Action No. 4:16-cv-1057-A |

**REPLY BRIEF IN SUPPORT OF DEFENDANT
APFA'S MOTION FOR SUMMARY JUDGMENT**

ANDREW D. ROTH*
D.C. Bar No. 414038
ROBERT ALEXANDER*
D.C. Bar No. 465673
ADAM BELLOTTI*
D.C. Bar No. 1020169
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St. N.W., Tenth Floor
Washington, D.C. 20005
Tel: (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
Email: ralexander@bredhoff.com
Email: abellotti@bredhoff.com

SANFORD R. DENISON
Texas Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, TX 75214
Tel: (214) 637-0750
Fax: (214) 637-0730
Email: denison@baabdenison.com

*Admitted Pro Hac Vice

Attorneys for Defendant Association
of Professional Flight Attendants

## ARGUMENT

I. THE DOL'S EFFORT TO NULLIFY THE RESULTS OF APFA'S ELECTION BASED ON ALLEGED BALLOT-SECRECY VIOLATIONS FAILS AS A MATTER OF LAW

APFA showed in its brief in support of summary judgment ("APFA Br."; Dkt. No. 28) that the DOL's effort to nullify the results of APFA's election based on alleged ballot-secrecy violations fails as a matter of law. *See* APFA Br. at 4-10. And, in its brief in response to the DOL's motion for summary judgment ("APFA Resp. Br."; Dkt. No. 37), APFA reinforced this showing. *See* APFA Resp. Br. at 1-7. The linchpin of APFA's showing on this issue is the Willertz concession that there is "just no way" that APFA members could have made "any sort of assessment as to whether or not votes and voters could be connected" through the matching up of data stored on BallotPoint's two separate computer servers.

In its brief in response to APFA's motion for summary judgment ("DOL Resp. Br."; Dkt. No. 35), the DOL makes a passing effort to overcome the Willertz concession, *see* DOL Resp. Br. at 28-30, but that effort is entirely unsuccessful.[1]

According to the DOL, the Willertz concession does not carry the day for APFA because it does not negate the possibility that APFA members had some generalized "fear," "worry" or "suspicion" about the secrecy of BallotPoint's internet-based electronic voting system. *See* DOL Resp. Br. at 28-30 & n.15. That is a *non sequitur*, because it is not APFA's burden to negate such a possibility, and the Willertz concession has not been offered for such a purpose.

Under the LMRDA, the nullification of a union election is appropriate only where the election has been conducted in some manner that violates the LMRDA *and where that violation*

---

[1] That effort follows a lengthy repetition of two arguments previously made by the DOL in support of its motion for summary judgment on this issue. *See* DOL Resp. Br. at 16-28. APFA has already addressed these arguments in its prior briefing and shown them to be meritless. *See* APFA Resp. Br. at 3-7.

"may have affected the outcome of [the] election." *See* 29 U.S.C. § 482(c)(2). Here, the DOL does not allege that the mere fact that APFA used an internet-based electronic voting system operated by BallotPoint amounted to a violation of the LMRDA's ballot-secrecy requirement, thus making it potentially relevant whether APFA members had some generalized "fear," "worry" or "suspicion" about the secrecy of that system. Rather, the DOL alleges that there is *a specific flaw in the BallotPoint system constituting violations of the LMRDA's ballot-secrecy requirement*: namely, that the BallotPoint system "stores and maintains member identifying information and voting records on two servers in a way that could allow individuals with access to both of the servers to identify how a member voted." *See* Complaint ¶ 21.

Against this background, APFA's burden under the statute, as definitively construed by the Supreme Court in *Wirtz v. Hotel, Motel & Club Employees Union, Local 6* ("*Wirtz v. Hotel Employees*"), 391 U.S. 492 (1968), is to negate the reasonable possibility that the alleged specific flaw in the BallotPoint system constituting violations of the LMRDA's ballot-secrecy requirement "may have affected the outcome" of APFA's election. APFA's tendering of the Willertz concession plainly satisfies this burden, because if there is "just no way" that APFA members could have known about the alleged specific flaw in the BallotPoint system constituting violations of the LMRDA's ballot-secrecy requirement, there is "just no way" that that alleged specific flaw could have caused APFA members to alter their planned voting behavior, thus potentially affecting the outcome of APFA's election. *See* APFA Br. at 6-9.

In *Wirtz v. Hotel Employees*, the Supreme Court recognized that the voiding of a union officers' election is strong medicine that has an inevitable "disruptive effect" on the union's affairs. 391 U.S. at 507. Such a harsh remedy is warranted, the Court concluded, only where

"there is a meaningful relation between a violation of the Act and results of a particular election." *Id.*

The Willertz concession definitively establishes that there is *no relation at all* between the specific kind of ballot-secrecy violations alleged by the DOL in this case and the outcome of APFA's election, much less a "meaningful" relation. To borrow an analogous concept from another area of the law, the Willertz concession definitively establishes that if ballot-secrecy violations of the kind alleged by the DOL occurred, those ballot-secrecy violations amounted to "harmless error" insofar as the outcome of APFA's election is concerned. To nullify the results of APFA's election based on such harmless error would be contrary to the Supreme Court's conclusion in *Wirtz v. Hotel Employees* that such a harsh remedy is warranted only where "there is a meaningful relation between a violation of the Act and results of a particular election."

II.  **THE DOL'S EFFORT TO NULLIFY THE RESULTS OF APFA'S ELECTION BASED ON AN ALLEGED § 401(c) VIOLATION FAILS AS A MATTER OF LAW**

APFA showed in its summary judgment brief that the DOL's effort to nullify the results of APFA's election based on an alleged § 401(c) violation fails as a matter of law. *See* APFA Br. at 10-21. And, in its brief in response to the DOL's motion for summary judgment, APFA reinforced this showing. *See* APFA Resp. Br. at 12-15. The DOL launches a multi-prong attack on this showing in its brief in response to APFA's motion for summary judgment, *see* DOL Resp. Br. at 31-45, but that attack fails at every turn.

(A)  The DOL initiates its attack by charging that APFA's showing rests on a "mischaracterization" of the DOL's § 401(c) violation claim: the purported "mischaracterization" being that the DOL seeks to nullify APFA's election on the ground that APFA failed to engage in the impossible task of affording candidates their specific § 401(c) right

- 3 -

"to have an observer at the polls and at the counting of the ballots." *See* DOL Resp. Br. at 34-36. There is no merit in this "mischaracterization" charge.

The DOL's Complaint expressly alleges as its "SECOND CAUSE OF ACTION" that APFA violated § 401(c) "by denying" a "right" that candidates for union office have under § 401(c), *see* DOL Complaint ¶ 26, and the *only* such "right" that exists is the specific "right of any candidate to have an observer at the polls and at the counting of the ballots," *see* 29 U.S.C. § 481(c).[2] Equally to the point, it is undisputed that where, as here, a union election is conducted using an internet-based electronic voting system, it is literally impossible for a union to afford candidates their specific § 401(c) right "to have an observer at the polls and at the counting of the ballots." *See* APFA Br. at 10-11 & n.6. Putting these two points together, there is no way around the fact that the DOL's § 401(c) violation claim seeks to nullify APFA's election on the ground that APFA failed to engage in the impossible task of affording candidates their specific § 401(c) right "to have an observer at the polls and at the counting of the ballots."

Importantly in this regard, there is no merit in the DOL's thinly-veiled suggestion that there is something unique about the "specific" BallotPoint internet-based electronic voting system "used by the APFA in its January 2016 election" that made it impossible for APFA to afford candidates their specific § 401(c) right "to have an observer at the polls and at the counting of the ballots." *See* DOL Resp. Br. at 45. Rather, as the DOL itself has acknowledged

---

[2] To be sure, ¶ 26 of the Complaint characterizes the right that candidates for union office have under § 401(c) as the broader and more general right to have an observer "in" a union election. But it goes without saying that the Complaint's characterization of a candidate's rights under § 401(c) cannot trump or displace the statute's actual language.

-4-

on the record of this case and elsewhere, that impossibility of compliance with § 401(c)'s specific observer requirement is inherent in the use of an internet-based electronic voting system.[3] Indeed, nowhere in its Complaint or in its briefing of this case does the DOL even attempt to identify *any* action that APFA or BallotPoint could have taken in the January 2016 election to afford candidates their specific § 401(c) right "to have an observer at the polls and at the counting of the ballots."

**(B)** The DOL goes on to assert that APFA has compounded its purported "mischaracterization" of the DOL's Complaint by "attempt[ing] to create an artificial distinction within 29 U.S.C. § 481(c) between an 'observer claim' and a separate 'adequate safeguards' claim." DOL Resp. Br. at 36; *see also id.* at 40 (asserting that "APFA's distinction is an artifice that does not correspond to the LMRDA itself or to the way that the Secretary actually interprets and enforces the LMRDA"). Here again, nothing could be further from the truth.

In his June 13, 2017 deposition in this matter, APFA examined DOL official Stephen J. Willertz at length about the DOL's policies and practices in interpreting and enforcing § 401(c)—both in the specific circumstances of this case and more generally. And the Secretary has stipulated that, in responding under oath to APFA's inquiries on this subject, Willertz "was

---

[3] A defining feature of an internet-based electronic voting system is that voters cast their ballots remotely over the internet or by telephone from a location of their own choosing, rather than in-person at a central polling site or at multiple polling sites. Thus, there are no "polls" in a union election conducted using such a voting procedure, making it impossible for the union to afford candidates the right to have an observer "at" those non-existent "polls." APFA Appendix of Evidentiary Materials ("App."; Dkt No. 30) at 37-39, 48-49 (Willertz Dep. at 166-68, 195-96) (DOL concession on this point). And, because another defining feature of an internet-based electronic voting system is that the cast ballots are recorded and counted electronically by a computer in a manner that cannot be seen by the human eye, it also is impossible for a union using this voting procedure to afford candidates the right to have an observer "at the counting of the ballots." App. at 40-41 (Willertz Dep. at 171-72) (DOL concession on this point). As the DOL neatly summed up the matter in its recently-issued guidance on internet-based electronic voting procedures, neither "the 'polls'" nor "[the] 'tally'" are "visible" to the human eye when such a voting procedure is used. App. at 41, 69 (Willertz Dep. at 172 & Exh. 13, p.3).

authorized to testify and did testify on the DOL's behalf within the meaning of Fed. R. Civ. P. 30(b)(6)." *See* App. at 72 (Stipulation); *see also* DOL Resp. Br. at 17 n.12 (acknowledging this Stipulation). As shown below, Willertz's extensive testimony on this subject utterly belies the DOL's assertion that APFA's distinction between an observer claim and a separate adequate safeguards claim "is an artifice that does not correspond to the LMRDA itself or to the way that the Secretary actually interprets and enforces the LMRDA."

In his testimony, Willertz acknowledged that a DOL regulation (29 C.F.R. § 452.110) interpreting § 401(c) reads that statutory provision as containing "*a separate requirement from observer rights*, and the requirement is a general mandate that adequate safeguards be provided in an election." App. at 50 (Willertz Dep. at 199) (emphasis added).[4] And, most significantly for present purposes, Willertz went on to testify that in its investigation of APFA's election and its crafting of the Complaint in this action, the DOL drew the very distinction between an observer claim and an adequate safeguards claim that the DOL now asserts "is an artifice" conjured up by APFA, *and did not find a basis for the adequate safeguards claim*:

> Q:  Did you make a finding, in the course of your investigation, as to whether the union, through the hiring of BallotPoint, provided adequate safeguards to ensure a fair election, and therefore, satisfied that general mandate? Did you make an investigatory finding on that point?
>
> A:  Yeah. *We didn't find that there was a violation of general fairness adequate safeguards*. The finding was that there was not observer rights.
>
> Q::  Observer rights, okay.
>
> A:  Yes.
>
> Q:  And in the same vein -- do you have the complaint in front of you still?

---

[4] 29 C.F.R. § 452.110 expressly states that "[*i*]*n addition to* the election safeguards discussed in this part"—one of which is § 401(c)'s specific observer safeguard, *see* 29 C.F.R. § 452.107—"the Act contains a general mandate in section 401(c) that adequate safeguards to insure a fair election shall be provided." (Emphasis added).

> A:   Yes.
>
> Q:   Is there any factual allegation in this case that BallotPoint -- that the union did not comply with the general mandate in the statute to provide adequate safeguards to ensure a fair election?
>
> A:   *No. I don't see that here.* Did I miss it?

App. at 50-51 (Willertz. Dep. at 199-200).[5]

Further undermining the DOL's assertion, Willertz also conceded that the DOL's out-of-court pronouncements regarding mail ballot and internet-based electronic voting procedures, in which it is impossible to comply with § 401(c)'s specific observer requirement, reflected the DOL's view that § 401(c) contained *a separate adequate safeguards requirement* that unions *could* comply with through the adoption and implementation of certain "substitute" or "alternative" safeguards that would render the use of such voting procedures lawful under the LMRDA. Specifically, Willertz acknowledged that the DOL's interpretative regulation regarding mail ballot voting procedures reflected the view that although "you can't have an observer at the polls" in a mail ballot election, it is possible to "come up with a substitute set of [observer] safeguards" that, if followed, would satisfy § 401(c)'s separate "adequate safeguards" requirement and thus render the mail ballot election LMRDA-compliant. *See* App. at 42-43 (Willertz Dep. at 173-74). And, Willertz acknowledged that the DOL's recently-issued guidance on internet-based electronic voting procedures reflected the same view of § 401(c):

> Q:   Switching gears now to remote electronic. Correct me if I'm wrong, but I read this guidance as saying that notwithstanding the fact that the polls and the tally are not visible, so the traditional observer rights don't apply, it, at least in theory, is possible to handle electronic balloting in the same way as mail balloting. In other words, we will come up with a set of alternatives --
>
> A:   *Yes.*

---

[5] As APFA's prior discussion of the DOL's Complaint shows, Willertz did not "miss it." It is simply not there.

> Q:   -- that we regard as adequate, okay?
>
> A:   [*Witness nodding*]
>
> . . . .
>
> Q:   That this reflects a view of OLMS that it is, at least theoretically, possible that you could come up with a set of substitutes for the traditional observer rights, such as this technology, paper, paper balloting, client-side encryption, auditing, various auditing rights are noted. You could come up with a series of safeguards that would serve the same function in a remote balloting context as these alternative safeguards in the mail ballot context. That would give us -- or at least theoretically possible that *we would regard an electronic election conducted with these group of safeguards as meeting the general mandate in the statute that the adequate safeguards are in place.* Is that fair?
>
> A:   *Yes. Yes.*

App. at 46-47 (Willertz Dep. at 192-93).[6]

(C)   Finally, the DOL argues that "[t]here is no merit to [APFA's] claim" that "the Secretary is interpreting the LMRDA's observer requirement in such a way that a ruling in the Secretary's favor in this litigation would have the alleged effect of 'prohibit[ing] unions from using mail balloting and internet-based voting procedures to conduct their elections," *see* DOL Resp. Br. at 43-44—pointing in support of this argument to the DOL's *out-of-court*

---

[6] In an effort to blunt the force of the Willertz testimony on this subject, the DOL points to the fact that both of the above-described out-of-court pronouncements contain certain explanatory language, headings and subheadings that "treat[]" the alternative observer and technology-based (in the case of electronic voting) safeguards required by those pronouncements as satisfying § 401(c)'s observer requirement rather than § 401(c)'s separate adequate safeguards requirement. *See* DOL Br. at 38-43. But this "treatment" of the matter is analytically unsound. As APFA has shown, § 401(c)'s observer requirement is highly specific in nature, providing for observer rights in two specific contexts—"at the polls" and "at the counting of the ballots." By force of logic, any *other* safeguards adopted and implemented by a union that are sufficient to ensure the fairness of a union election—whether they be observer safeguards *of another kind* or technology-based safeguards—are properly "treat[ed]" as satisfying § 401(c)'s separate (and more general) adequate safeguards requirement and *not* § 401(c)'s specific observer requirement. To the extent that the DOL's out-of-court pronouncements contain explanatory language, headings and subheadings suggesting otherwise, those materials cannot overcome the force of this logic *or* the Willertz testimony candidly acknowledging the reality of the matter.

*pronouncements* that is possible for unions to conduct LMRDA-compliant mail ballot and internet-based electronic voting elections notwithstanding their inability to comply with § 401(c)'s specific observer requirement in those contexts, *see id.* at 44-45. This is a baseless argument that fails to acknowledge, much less come to grips with, APFA's actual claim regarding the DOL's interpretation of § 401(c).

APFA's claim is *not* directed at the interpretation of § 401(c) that logically flows from the DOL's out-of-court pronouncements permitting the use of mail ballot and internet-based electronic voting procedures notwithstanding a union's inability to comply with § 401(c)'s specific observer requirement in those contexts. Indeed, APFA has embraced this out-of-court interpretation of § 401(c) as an eminently proper and sound interpretation of the statute. *See* APFA Br. at 13-16, 21. Rather, APFA's claim is directed at the DOL's *contrary in-court interpretation of § 401(c) in this case*, under which any election procedure in which compliance with § 401(c)'s specific observer requirement is impossible is, by definition, a non- "LMRDA-compliant" election procedure that a union is not free to use. *See id.* at 12-13, 16.[7]

APFA's summary judgment brief contains a detailed showing that this contrary in-court interpretation of § 401(c) is improper and unsound from every relevant vantage point, *see* APFA Br. at 16-21, and the DOL's responsive brief contains no response at all to any aspect of that detailed showing. This silence on the DOL's part speaks volumes.

---

[7] The DOL first advanced this contrary in-court interpretation of § 401(c) in its brief opposing APFA's motion to dismiss. *See* APFA Br. at 13-16. But the DOL has embraced this contrary in-court interpretation of § 401(c) anew in its summary judgment brief, using nearly verbatim language. *See* Brief in Support of Plaintiff's Motion for Summary Judgment (Dkt. No. 32) at 31-32 ("[E]ven assuming that the APFA were correct that there is no possible way to allow observers to verify the counting of votes in the specific electronic voting system the APFA has opted to use, it would not follow that the LMRDA's observer requirement is thereby simply rendered inapplicable to the APFA's election. Instead, since the LMRDA expressly requires that observers be permitted at the "counting of the ballots," the logical consequence of the APFA's argument would be that the APFA has failed to conduct an LMRDA-compliant election . . . .").

## CONCLUSION

For the foregoing reasons, and those set forth in APFA's prior briefing, APFA's motion for summary judgment should be granted.

Respectfully submitted,

ANDREW D. ROTH*
D.C. Bar No. 414038
ROBERT ALEXANDER*
D.C. BAR No. 465673
ADAM BELLOTTI*
D.C. Bar No. 1020169
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St. N.W., Tenth Floor
Washington, D.C. 20005
Tel: (202) 842-2600
Fax: (202) 842-1888
Email: aroth@bredhoff.com
Email: ralexander@bredhoff.com
Email: abellotti@bredhoff.com

Baab & Denison, LLP
6301 Gaston Avenue, Suite 550
Dallas, TX 75214
Tel: (214) 637-0750
Fax: (214) 637-0730
Email: denison@baabdenison.com

Attorneys for Defendant Association
of Professional Flight Attendants

* Admitted Pro Hac Vice

DATED: September 20, 2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of September, 2017, the above and foregoing Reply Brief in Support of APFA's Motion for Summary Judgment was served on the following Plaintiff's counsel of record electronically by email transmission and by overnight mail, as authorized by Federal Rule of Civil Procedure 5(b):

Brian W. Stoltz
Assistant United States Attorney
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

SANFORD R. DENISON