ORIGINAL

CLERK OF DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED

2018 DEC 26 AM 11: 59

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THOMAS E. PEREZ [now
R. ALEXANDER ACOSTA],
Secretary of Labor,

      Plaintiff,

v.

ASSOCIATION OF PROFESSIONAL
FLIGHT ATTENDANTS,

      Defendant.

Civil Action No. 4:16-CV-1057-A

## NOTICE OF CERTIFICATION OF ELECTION
## AND REQUEST FOR ENTRY OF ORDER

This is an action brought by the Secretary of Labor under the Labor-Management

Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 401 *et seq.*, concerning

an election of union officers conducted by defendant, the Association of Professional

Flight Attendants (APFA). The Court previously entered judgment voiding the election

in question and ordering that a new election be conducted under the supervision of the

Secretary. (*See* Doc. 42 (final judgment).)

The supervised election (including a run-off) has now been completed. Pursuant

to the terms of the Court's judgment and section 402(c) of the LMRDA (29 U.S.C.

§ 482(c)), the Secretary files the attached Certification of Election to certify the names of

the persons elected. In addition, the attached Declaration of Sharon Hanley provides

information about the Department of Labor's resolution of certain protests lodged in the course of the supervised election.

The Secretary also requests, pursuant to section 402(c) of the LMRDA (29 U.S.C. § 482(c)), that the Court enter an order decreeing such persons named in the Certification of Election to be the officers of the APFA. *See* 29 U.S.C. § 482(c) (stating that after a certification has been filed, "the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization").

Respectfully submitted,

ERIN NEALY COX
UNITED STATES ATTORNEY

*Brian W. Stoltz*
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Plaintiff

## Certificate of Conference

This is to certify that I have conferred with counsel for defendant, the Association of Professional Flight Attendants, about the relief requested herein, and it is unopposed.

Brian W. Stoltz
Assistant United States Attorney

## Certificate of Service

On December **26**, 2018, I served the foregoing document on defendant, the Association of Professional Flight Attendants, by mailing it by prepaid first-class mail to defendant's counsel of record, addressed as follows:

Andrew D. Roth
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth St., N.W., Tenth Floor
Washington, D.C. 20005

Brian W. Stoltz
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THOMAS E. PEREZ [now
R. ALEXANDER ACOSTA],
Secretary of Labor,
      Plaintiff,

v.

ASSOCIATION OF PROFESSIONAL
FLIGHT ATTENDANTS,
      Defendant.

Civil Action No. 4:16-CV-1057-A

## CERTIFICATION OF ELECTION

The election having been conducted in the above matter under the supervision of the

Secretary of Labor, United States Department of Labor, pursuant to the Final Judgment signed

on September 26, 2017, in the United States District Court for the Northern District of Texas,

Fort Worth Division, in accordance with the provisions of Title IV of the Labor-Management

Reporting and Disclosure Act of 1959 (29 U.S.C. §§ 481-483), and in conformity with the

Constitution and Bylaws of the defendant labor organization, insofar as lawful and practicable,

therefore,

Pursuant to Section 402(c) of the Labor-Management Reporting and Disclosure Act of

1959 (29 U.S.C. § 482(c)), and the authority delegated to me,

**IT IS HEREBY CERTIFIED** that the following named candidates are duly elected to

the offices designated for the Association of Professional Flight Attendants:

| | |
|---|---|
| President | Lori Bassani |
| Vice President | Liz Geiss |
| Secretary | Lisabeth Hillman |

Treasurer                              Craig Gunter

Attached herewith is a declaration setting forth the protests concerning violations which were alleged to have occurred in the conduct of the election and the findings of the investigation of these protests.

Signed this *12* day of December, 2018.

Sharon Hanley, Chief
Division of Enforcement
Office of Labor-Management Standards
United States Department of Labor

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THOMAS E. PEREZ [now
R. ALEXANDER ACOSTA],
Secretary of Labor,

      Plaintiff,

v.

ASSOCIATION OF PROFESSIONAL
FLIGHT ATTENDANTS,

      Defendant.

Civil Action No. 4:16-CV-1057-A

## DECLARATION OF
## SHARON HANLEY

I, Sharon Hanley, am the Chief of the Division of Enforcement, Office of Labor-

Management Standards (OLMS), United States Department of Labor (Department). The

Department supervised an election of officers of the Association of Professional Flight

Attendants (Defendant or APFA) on April 13, 2018, and a run-off election on May 23,

2018, pursuant to a Court Order entered September 26, 2017. Pursuant to this Court

Order, the supervised election included new elections for the positions of: National

President, National Vice President, National Secretary and National Treasurer. The

Election Supervisor had the authority and responsibility for implementing all aspects of

the supervised election. The Defendant's Election Committee conducted the election

under the supervision of the Department.

1

I.    **Procedural Background**

The Pre-Election Conference was held at 12:00 p.m. on January 17, 2018, at the APFA Headquarters located in Euless, Texas.  The purpose of the conference was to develop election rules and procedures and to establish timeframes to be used in conducting the election.  The conference was open to all candidates, in person or via teleconference, and provided attendees the opportunity to participate in formulating the election rules by presenting materials or comments.

At the January 17, 2018, Pre-Election Conference, Keith L. King—an OLMS Investigator designated as the Election Supervisor (Election Supervisor)—established the election rules, including candidate and voter eligibility, protest procedures, and time frames for APFA's supervised election.  He also advised attendees that election rules or clarifications could be added by the Election Supervisor as needed.

Following the Pre-Election Conference, the Election Rules, entitled "General Rules For Electing Officers In APFA National Officer Election," (Election Rules) were mailed to all candidates on February 6, 2018, and included information and guidelines that resulted from the conference.  The Election Rules advised the attendees that the Department was responsible for ensuring that the election is conducted in accordance with the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), and, insofar as lawful and practicable, in accordance with provisions of the APFA Constitution and the APFA Policy Manual.

On January 24, 2018, the Willingness-to-Serve (WTS) form, which served as the notice of nominations, was posted on the APFA website.  Members were required to

2

return the WTS forms to a designated post office box prior to 10:00 a.m. on February 22, 2018. A total of eighteen members returned WTS forms nominating candidates for the four offices; each office was contested.

On March 14, 2018, ballot packages were sent to every member's last known home address. Each ballot package included voting instructions/election notice, an unmarked ballot, a secret ballot envelope, a return ballot envelope, and a candidate information booklet. The candidate information booklet and an election reminder were posted on APFA's website, and a reminder was emailed as a "Hotline" message.

The tally for the supervised election was conducted on April 13, 2018, for the offices of: National President, National Vice President, National Secretary and National Treasurer. Under the APFA's Constitution, a winning candidate must receive a majority of the votes cast. There was a winning candidate for all offices, but the office of National Treasurer. On April 23, 2018, a ballot package including a run-off ballot containing the names of the two candidates for National Treasurer who received the highest number of votes was sent to all members, and the tally took place on May 23, 2018. The list of those candidates who won each of the offices contested in the election and the run-off election is attached.

II.   **Pre-Election Protests**

The protest procedure provided in the Election Rules required that protests "be in writing and received by the OLMS Election Supervisor no later than 4:30 PM Central Time on Monday, April 23, 2018, for the primary election." The Department received three pre-election protests from a candidate for National Vice President, Rock Salomon,

and one post-election protest from a candidate for National President, Samuel Morales, which was untimely. These protests are summarized below.

**First Protest:** On March 15, 2018, Salomon alleged that biographical information submitted by a member of his slate, Samuel Morales, candidate for National President, was intentionally omitted from the candidate information booklets mailed to each member. In addition, Salomon alleged that the candidate information booklets listed an incorrect website for Morales' three running mates (Salomon, LeBlanc, and Johnson).[1] Salomon's slate originally listed "www.APFA2018.org" as its website, but changed it to "LetsCleanHouse.org" when they were told that usage of the "APFA" acronym was not permitted. However, the candidate booklets included the originally-named website for three of the four slate members.

**Response:** Section 401(c) of the LMRDA prohibits disparate treatment of candidates with respect to distribution of campaign literature. 29 U.S.C. § 481(c). It also requires that adequate safeguards to insure a fair election be provided. OLMS first learned of possible errors in the candidate booklets on March 14, 2018, when it received email messages from Morales and Donald LeBlanc, another member of Morales' slate. Upon receiving this information, OLMS investigated and determined that the candidate information booklets contained the alleged errors as well as another error related to an incumbent candidate. The investigation did not reveal any evidence that the omissions were intentional. To remedy the errors, OLMS instructed the APFA election committee,

---

[1] Salomon did not characterize his message raising these issues as a "formal protest," but OLMS treated them as such.

4

the National Balloting Committee (NBC), to notify the membership of the errors and to provide a link to the corrected candidate information on the union's website. On the same day, March 14, 2018, the NBC issued an email "Hotline" message to the membership, informing members of the errors and providing a link to the corrected candidate information. Once investigated and confirmed, the errors, which affected both insurgent and incumbent candidates were promptly remedied. To the extent this inconsistency constituted a violation, it was promptly remedied, and there was no effect on the outcome of the election.

**Second Protest**: On March 27, 2018, Salomon alleged the election vendor gave the Bassani slate preferential treatment when it included the acronym "APFA" before "Campaign Materials" in the subject line of two emails sent by the election vendor on behalf of the Bassani slate, but did not include this acronym in the subject line of emails sent on behalf of the Morales Slate. Salomon alleged that this gave the impression that the Bassani slate was endorsed by the APFA, while his slate, the Morales slate, was not.

**Response:** Section 401(c) of the LMRDA prohibits disparate treatment of candidates with respect to distribution of campaign literature. 29 U.S.C. § 481(c). OLMS investigated this allegation and determined that there was no evidence that the union or the election committee endorsed any slate, but confirmed that the APFA acronym had been included in the subject line of the Bassani slate's emails, but not those of the Morales slate. To remedy the inconsistency, the election committee instructed the election vendor to resend Morales' blast using the same wording in the subject line as

5

used for the Bassani slate. To the extent this inconsistency constituted a violation, it was promptly remedied, and there was no effect on the outcome of the election.

**Third Protest:** On April 2, 2018, Salomon filed a third election protest alleging that a campaign email blast sent on behalf of an opposing candidate, Roger Holmin, indicated that this candidate was tied to the Morales slate, and that voters could choose Morales or Holmin under the same ticket. Salomon alleged that this printing error was intentional and showed bias towards the Morales slate.

**Response:** Section 401(c) of the LMRDA requires that adequate safeguards to insure a fair election be provided. 29 U.S.C. § 481(c). OLMS investigated the allegation and determined that the election vendor mistakenly included campaign information from the Morales slate in a campaign email blast sent on behalf of the Holmin campaign on April 2, 2018. The investigation did not reveal any evidence that this error was intentional. As a remedy, the election vendor resent a corrected version of the Holmin email to the membership, deleting the reference to the Morales slate, and sent a separate email message to APFA members, dated April 4, 2018, informing them of the error, informing them that a corrected version of the email had been resent, and apologizing. To the extent this error could be considered an adequate safeguards violation, it was promptly remedied and accordingly did not affect the outcome of the election.

III.   **Post-Election Protest**

Morales filed one untimely post-election protest on April 26, 2018, that he subsequently amended twice in letters dated May 18, 2018 and June 20, 2018. As stated above, the Election Rules stated, "In order to be acted upon, all protests concerning the

6

conduct of the election must be in writing and received by the OLMS Election Supervisor no later than 4:30 PM Central Time on Monday, April 23, 2018, for the primary election." Morales participated in the January 17, 2018, Pre-Election Conference during which the protest procedures were introduced and discussed. Further, all conference participants had an opportunity to comment on proposed rules. Following the meeting, on February 6, 2018, a copy of the Election Rules was mailed to all candidates, including Morales. Finally, Morales was informed of the post-election protest procedures and the filing deadline during conversations with OLMS' Dallas field office in April 2018.

The protest procedures clearly state that all protests must be submitted to the OLMS Election Supervisor by Monday, April 23, 2018. Morales did not comply with these protest procedures. Instead, Morales disregarded the agreed upon Election Rules and filed a protest on April 26, 2018, with APFA NBC Chairperson under the exhaustion procedures set forth in the APFA Constitution, which provide that protests may be filed with the APFA National Secretary, directed to the NBC, within fifteen days following the election. APFA Constitution, Article VI, Section 6.A. The NBC Chairperson forwarded the protest to OLMS, which determined that it was not filed in a timely manner because Morales filed it three days after the deadline provided by the election rules.

On May 17, 2018, OLMS District Director Michelle Hussar sent Morales a dismissal letter informing him that his protest was untimely under the Election Rules and that "in the context of an OLMS-supervised election, the union's internal protest provisions are inapplicable." In addition, she informed him that OLMS had reviewed the ten allegations raised in his April 26, 2018, protest and had concluded that none of them

7

constituted violation of the LMRDA which may have affected the outcome of the election.

On May 18, 2018, Morales continued to follow the APFA exhaustion procedures by filing an appeal of his protest with APFA Executive Committee within forty-five days of the election. APFA Constitution, Article VI, Section 6.D. Morales added one additional allegation to the background section of his protest, but still dated April 26, 2018. In the letter accompanying the revised protest, he maintained that the APFA exhaustion procedures were valid and that the period during which protests could be filed was shortened by five days by virtue of an "undisclosed agreement" between DOL and APFA attorney Kathleen Phillips. He claimed that the protest period could not be changed except through a constitutional amendment ratified by a majority of active members in good standing pursuant to Article III, Section 1.B.

On June 25, 2018, OLMS received Morales' complaint to the Secretary of Labor, dated June 20, 2018.[2] In this complaint, he claimed to have exhausted his internal remedies and to be following the procedures outlined in both the APFA constitution and the LMRDA to seek a remedy. As part of this June 20 letter, Morales attached his untimely April 26 protest, but notably included additional allegations, not raised in his initial protest.

When supervising court-ordered elections, OLMS has a wide range of discretion in discharging its duties. *See, e.g., Brennan v. Local 551 United Auto Workers*, 486 F.2d

---

[2] DOL' Office of the Solicitor received an email message forwarding the June 20 letter on June 22, 2018.

6 (7th Cir. 1973). It is OLMS' long-standing practice to provide a ten-day period for filing protests in supervised elections. As occurred in this matter, during the course of a supervised election, OLMS makes certain that Election Rules—including election protest procedures—are clearly communicated to all candidates and union members. The rationale for applying a uniform ten-day protest period in the context of supervised elections is drawn from OLMS' institutional experience that union exhaustion procedures vary greatly and creating one set of standard procedures for use in supervised elections provides a clear alternative to a particular union's own procedures, and thus decreases confusion during a supervised election.

*Morales' Initial Protest to OLMS*

Despite Morales' failure to submit his protest in a timely manner, OLMS investigated the ten allegations contained in his original April 26, 2018, protest.[3] Though not required, because of its supervisory role in this election, OLMS chose to consider Morales' allegations to confirm that no violations occurred that may have affected the outcome of the supervised election. For the reasons explained below, OLMS concluded that none of the allegations contained in the initial protest constituted violation of the LMRDA which may have affected the outcome of the election.

---

[3] Morales listed nine specific allegations in his original protest, but also asserted that his right to have an observer at the polls was denied in the protest's background section. Accordingly, OLMS viewed his initial protest as including ten separate allegations.

9

Five of his allegations repeated the allegations raised by Salomon in his pre-election protests;[4] OLMS responded to these allegations above. The responses to each of his remaining allegations follow below.

Morales alleged that the NBC Chairperson, Cindy Horan, violated her duty to be fair and impartial, as required by the APFA policy manual, Section 14, when she brought charges against Morales. Although an election chair's lack of impartiality towards candidates in an election could implicate a union's obligations under Section 401(c) to refrain from discrimination against candidates and to provide "adequate safeguards to insure a fair election," 29 U.S.C. § 481(c), in this case there was no evidence that the NBC Chairperson acted in a biased or impartial manner during the conduct of the supervised election.

As background, on July 1, 2016, Morales filed internal charges against Horan and four other members for sending a "Hotline" email message to the membership while OLMS was investigating his protests related to the January 9, 2016, challenged election.[5] He alleged that the text of the message violated his rights under the APFA constitution to file election protests and to be treated fairly during the course of the OLMS investigation. The text of the message read as follows:

> Some flight attendants have received telephone calls or messages from the U.S. Department of Labor, Office of Labor Management Standards (DOL). We believe these calls are being made in connection with a complaint filed with the DOL by a former candidate challenging the result of the recent APFA National Vice

---

[4] Morales' allegation numbers 2 and 3 repeat the allegations of Salomon's first protest; allegation numbers 4 and 6 repeat Salomon's second protest; and allegation no. 7 repeats Salomon's third protest.
[5] The Court's September 26, 2017, decision declared the January 9, 2016, election void and ordered a new election under the supervision of the Secretary, which was conducted on April 13, 2017, and is the subject of Morales' protest.

President election. If you have any questions, you can contact the National
Balloting Committee at ballot@apfa.org or the Department of Labor's Dallas
Office at 972-850-2500.

Cindy Horan
APFA National Ballot Committee Chair
ballot@apfa.org

In March 2017, members against whom Morales' had filed internal charges, including

Horan, filed charges alleging Morales' July 1, 2016, charges as well as other election

protests constituted "willfully bringing charges without reasonable basis" in violation of

the APFA constitution. Ultimately, all charges were either dismissed or withdrawn.

Morales remained a member in good standing and eligible to be nominated to run for the

office of National President.

These internal charges and counter-charges related to prior elections and occurred

prior to the supervised election period. Further, by definition, this supervised election

was conducted under the supervision of OLMS, not the NBC chairperson, and there was

no evidence that her actions lacked neutrality. Accordingly, there was no violation.

Morales alleged that APFA's legal counsel, Kathleen Phillips, improperly

interfered with the election when Morales' slate was told that they were not permitted to

use the APFA acronym in their election website. Morales' slate had been using

"apfa2018.org" as its campaign website address. Section 401(g) prohibits the use of

union resources to promote the candidacy of any person in an LMRDA-covered election.

29 U.S.C. § 481(g). Morales asserts that the APFA acronym is not a union resource, and

11

therefore, he should have been permitted to use the acronym in his slate's campaign website address.

The investigation revealed that all candidates, including Morales, were informed in candidate letters sent by the NBC on February 23, 2018, that APFA interpreted section 401(g)'s prohibition to include a prohibition against the "use of . . . the APFA logo or any other symbol that might appear to be an endorsement by the APFA." Further, under Section 12.C.2 of the APFA Policy Manual, ". . . [t]he APFA strictly prohibits unauthorized use of the APFA name or logos associated with the APFA by all persons, whether a representative, common member, elected member, non-member or others, for individual purposes or for purposes other than those authorized by the APFA."

On March 1, 2018, Horan called the OLMS Election Supervisor to report that Morales' slate was violating the APFA policy manual by using the APFA name in its campaign website. In its supervisory role, OLMS instructed Horan to inform the candidates involved that the use of the APFA name was not permitted and to provide the candidates with a deadline to change the name of their slate so that the corrected information could be included in the candidates' campaign booklet. OLMS did not consult Phillips, nor is there any other evidence that Phillips had a role in this decision or in communicating this prohibition to Morales' slate. OLMS reviewed the union's policy and found it both reasonable and consistent with section 401(g) of the LMRDA. Accordingly, there was no violation.

Morales alleged that the supervised election violated the LMRDA because at the election tally, the election officials did not categorize voter information by each of the

12

fourteen bases comprising the membership of the union, including, e.g., the total number of votes cast per base or the total number of voided votes per base. This allegation does not implicate the LMRDA or the APFA constitution. The LMRDA requires a tally of the ballots cast by members, but does not address subsets of the membership. *See* 29 U.S.C. § 481(e). Moreover, the APFA constitution does not contain any requirements that the union categorize voter information during the election tally. Accordingly, there was no violation.

Morales alleged that the presence of APFA's legal counsel in the "sterile" area of the ballot count tainted the ballot count in violation of the LMRDA. Section 401(c) of the LMRDA requires that "[a]dequate safeguards to insure a fair election shall be provided." 29 U.S.C. § 481(c). Neither the APFA constitution nor the Election Rules prohibited Phillips from being present at the tally. More importantly, there is no evidence that Phillips' presence affected the ballot count or the fairness of the election in any way. Accordingly, there was no violation.

Morales alleged that observers were too far away from the machines to observe the tally. Section 401(c) provides any candidate the right "to have an observer at the polls and at the counting of the ballots." 29 U.S.C. § 481(c). The investigation revealed that observers were placed at the back of the room because most of the room was used by the staff of the election vendor engaged in tallying the ballots. At the start of the tally, the OLMS Election Supervisor escorted Morales to the tables where the election vendor's staff were seated and where the computers were set up, and explained the tally process to Morales. He showed Morales the equipment configuration and answered Morales'

13

questions throughout this period.  Moreover, during the tally process and following the tally process, the OLMS Election Supervisor solicited questions from the candidates and observers and provided responses.  At that time no one—including Morales—communicated that they were unable to observe the tally process.  Thus, there was no violation.

*Morales' Subsequent Amendments to the Original Protest*

Following submission of his untimely April 26 protest, Morales raised three additional allegations related to the supervised election.  On May 18, 2018, Morales filed an appeal to the APFA Executive Committee, which included one additional allegation; and on June 20, 2018, he added two more allegations in a letter to the Secretary. Properly, OLMS determined that these allegations are not in scope because they were not raised in his original protest.  Though not required, because of its supervisory role in this election, OLMS chose to consider Morales' subsequent allegations to confirm that no violations occurred that may have affected the outcome of the supervised election.

On May 18, 2018, Morales alleged that legal counsel, Phillips, reached an agreement with OLMS which effectively amended the APFA constitutional requirements related to post-election protests.  It appears that Morales believed that OLMS' 10-day protest period for the supervised election somehow constituted an amendment to the APFA constitution, which provides a 15-day protest period in regular elections conducted by APFA.  He alleged that this "constitutional amendment" is contrary to the union's rules governing constitutional amendments.  As explained above, the 10-day protest period was a rule specific to this supervised election, based on OLMS' long-standing

14

policy. The protest procedures for the supervised election did not constitute an amendment to the APFA constitution. There was no violation.

On June 20, 2018, Morales included two new allegations in a subsequent complaint to the Secretary. Without any supporting evidence, Morales alleged that an attorney representing APFA, Mark Richard, acted improperly when he negotiated a monetary settlement with Bob Ross (who had been elected president in the voided January 9, 2016, election) in which Ross allegedly agreed to resign and not run in the subsequent election. Morales asserts that this agreement was executed to create an advantage for Bassani in the president's race.

This allegation implicates section 401(c)'s requirement that "[a]dequate safeguards to insure a fair election shall be provided." 29 U.S.C. § 481(c). The election took place under OLMS' supervision. On January 24, 2018, an election notice and nomination forms were posted on the APFA website, which informed APFA members that the April 13, 2018, election was being supervised by OLMS and described the nomination procedures. Seven members, including Morales and Bassani, were nominated to run for the office of president. Notwithstanding the speculative nature of Morales' allegations, there is no evidence that any member was precluded from nominating Bob Ross for the office of president or that Bob Ross was denied the opportunity to be a candidate for that office.

OLMS does not question a member's decision not to run for election unless there is evidence of coercion. Accordingly, there was no violation.

15

Last, Morales again raised observer concerns related to the tally. Specifically, Morales questioned whether the memory cards of the optical image scanners used to scan the ballots were tampered with. As part of this allegation, he relied upon observations that he recalled from the tally, a YouTube video relating to optical image scanners, to facts that he collected from an entirely unrelated litigation matter involving the election vendor, and a conversation that allegedly took place between himself and the OLMS Election Supervisor. He alleged that the OLMS Election Supervisor expressed concerns to him early in the morning and following the tally about the observability of the optical image scanners being used because "he'd never seen this type of machine (scanner) being used" and "because of the speed by which the canvassing of ballots was concluded."

As stated above, Section 401(c) provides any candidate the right "to have an observer at the polls and at the counting of the ballots." 29 U.S.C. § 481(c). During the investigation, the OLMS Election Supervisor's account of his statements to Morales did not corroborate Morales' version. Specifically, the OLMS Election Supervisor denied expressing such concerns to Morales. He stated that on the evening of the tally, Morales telephoned him, expressing concerns about the observability of the tally because he was unable to hear noise ("clicks") coming from the machines. Further, the investigation revealed that the election vendor adhered to its standard protocol when tallying the ballots of the election: (1) it scanned and processed the first several dozen ballots; (2) it visually audited them using their tallying and auditing application to make sure that the ballots were being read accurately; (3) it spot checked the ballots throughout the process to ensure accuracy; (4) it started with a zero tally database and used actual ballots thereby

16

negating the need to adjust the scanners to indicate a zero starting point; (5) it matched the tally number to the number of ballots received; and (6) it recorded the images of all the ballots onto a compact disc that was included in the sealed election records. Morales, the OLMS Election Supervisor, and numerous other observers were present to witness this procedure to ensure that the tally was conducted properly. No one present at the tally—including Morales—raised any concerns. Based on its investigation, OLMS determined that there was no violation.

The Department has concluded from its investigation that APFA's 2018 election of officers, conducted under the Department's supervision, complied with Title IV of the Act and was conducted, insofar as lawful and practicable, in accordance with the Defendant's constitution and bylaws. Therefore, no reason exists to overturn the results of this supervised election.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 12th day of December, 2018, in the City of Washington, District of Columbia.

Sharon Hanley, Chief
Division of Enforcement,
Office of Labor-Management Standards,
United States Department of Labor

17